No. 15,305.

LAVERTY *v.* THE PEOPLE.
(142 P. [2d] 381)

Decided October 18, 1943.

Mr. RALPH J. CUMMINGS, Mr. MERRITT D. VONDY, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-

RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of receiving stolen property, i.e., United States postage stamps of the value of $40.00, and sentenced to the penitentiary for a period of one to three years. To review that judgment he prosecutes this writ and assigns nine errors. Some of these are merely formal, the others are fully covered by his summarization which briefly stated is as follows: His motion for a directed verdict should have been granted because the evidence for the state "showed that the stamps had never, as a matter of fact, been stolen." That taking it at its face it disclosed that the stamps "were obtained either by confidence game, forgery, or by false pretenses and not by larceny." Also that title was not as alleged in the information.

The transaction in question, as the jurors were entitled to believe from the evidence, and we must assume did believe, was this: One Riesenman was secretary of the Security Life and Accident Company, hereinafter referred to as the company; one Cobb was assistant cashier thereof; and one Polk was its employee in charge of the stock room, supplies and mailing, including the purchase of postage. Concerning the latter it was the custom for Polk to make out a requisition, have it approved by Riesenman, then present it to Cobb who would give him a check for the necessary amount payable to the Denver postmaster, and with that check Polk purchased the postage. Defendant owned and operated a drugstore and in the instant case Polk, one of defendant's customers, prepared a requisition for 500 single post cards of the value of $5.00, presented it to Riesen-

man, and had it approved. He then altered it to call for 2000 double post cards of the value of $40.00. So altered he presented it to Cobb who, believing it to be genuine, drew the company's check for $40.00 payable to the postmaster and delivered it to Polk. With that check Polk proceeded to buy $40.00 worth of postage stamps of various denominations and took them to defendant to whom he sold them for $20.00 cash. Defendant made the purchase well knowing the facts. By evidence in this record, here uncontested, it appears that by similar deals, extending over a period of some nine months preceding the particular transaction involved, Polk had obtained and sold to defendant, for an average of one-third their face value, $1500 worth of such stamps, sometimes being paid in cash, sometimes in merchandise.

The information charges that defendant, "for his own gain, and to prevent the owner from again possessing his property, did then and there feloniously buy and receive of Fred W. Polk * * * United States postage stamps of the value of forty dollars ($40.00) of the personal property of the Securities Life and Accident Company, a corporation, then lately before feloniously stolen, taken and carried away, and which he, the said Ross H. Laverty, then and there well knew had been so feloniously stolen, taken and carried away."

We have but to decide whether these stamps were the property of the company and whether they were stolen. We think the answer to each is yes. In the view we take of this transaction it is unnecessary, and would be unprofitable, to attempt to follow the devious reasoning by which counsel endeavor to convince us that a reversal is justified. Polk obtained from the company a perfectly valid check and presented it to the person in whose favor it was drawn. When he received in return therefor $40.00 in postage stamps he was the company's servant and having exchanged its check for property, the company was the owner of that property. Had he merely overestimated the amount or kind of postage

required and returned that postage, as he was in duty bound, to the company's office, no shadow of doubt could rest upon the ownership. When instead he feloniously converted the stamps and presented them to defendant for sale they were stolen property as defendant well knew when he bought them. If more is required the process of exclusion will clarify it. When Polk left the postoffice with these stamps, title to them was somewhere, not merely suspended in the atmosphere. The possible owner is easy to find. It was either the United States government, or Polk, or the company, or the defendant. The government had sold them and received full value. It could not have been the owner. Polk was the company's servant engaged in the company's business. He had used the company's check to buy the stamps. He could not have been the owner. Defendant had never seen them. He had not even made an agreement for the purchase of any particular amount at this particular time and had paid nothing. Even if he had he knew Polk had no right to sell and he had no right to buy, hence defendant was not the owner. It follows that the only possible owner was the company. Defendant knew that whatever postage Polk bought in this manner he bought with the company's money and should return to the office of the company. When Polk appeared at his store with these stamps and offered them for sale he knew the servant had converted them and hence they were stolen and he bought them for half price with full knowledge.

■ "The trespass essential to make the taking by a servant larceny occurs when he changes the mere custody of his master's goods into an adverse possession in himself with a felonious intent. This is the doctrine of all the cases." 32 Am. Jur., p. 965, §59.

■ ■ The authorities have relieved us of the duty of attempting any fine distinctions to determine whether it was the check, the money, or the stamps which Polk had stolen, even if reason did not perform that service.

The ultimate thing which he obtained and disposed of was the stamps. "It is further urged that the evidence is insufficient to support the verdict because defendants received checks and not money. They received checks and Cross' money thereby authorized to be paid. In these circumstances it would seem ridiculous to hold that such variance between allegation and proof constitutes reversible error." *Arnett v. People,* 91 Colo. 56, 11 P. (2d) 806. "It is of no consequence whether the property fraudulently obtained was money or a check, as long as it was a thing of value, and in this instance, of exactly the same value, indeed, when it represents precisely the same thing." *Updike v. People,* 92 Colo. 125, 129, 18 P. (2d) 472.

Counsel for defendant say: "We must not lose sight of the fact that before a defendant can be convicted of receiving stolen goods, (1) the goods must have been in fact stolen; and (2) the goods received must have been the identical property taken from the owner." As to (1) there can be no question; but (2) must be interpreted in the light of the rule laid down in the two authorities last cited.

▉ Counsel for defendant insist that their position is supported, inter alia, by *State v. Matthews,* 143 Tenn. 463, 226 S.W. 203, and complain because the people fail to comment thereon. In that case the trial court sustained a demurrer to an indictment. The state appealed and the judgment was reversed. The reviewing court held that the indictment was one for embezzlement, not larceny, and that reference therein to the latter offense was mere surplusage. Hence what the court thereafter said about the essential elements of larceny was dictum. Were it otherwise and the opinion construed as counsel construes it, but we do not, no amount of reasoning could square it with the universal rule as laid down in American Jurisprudence, supra.

As to the contention that defendant was a principal in Polk's theft, or whatever offense he had committed,

it takes no imagination to discern that had he been so charged a much stronger defense would have been available to him than the one here made. Moreover, there is no evidence that defendant knew in advance anything about the particular transaction here involved until Polk appeared at his store and said, in substance, "I have just stolen some more postage from the company, $40.00 worth of it, and will sell it to you at half price." What prior knowledge he had was simply that derived from several months service as a fence for the thief who had, by a similar system, been purloining and disposing of his employer's property.

The judgment is affirmed.