No. 15,206.

CARPENTER, DIRECTOR OF REVENUE *v.* MAY DEPARTMENT
STORES COMPANY.
(143 P. [2d] 270)

Decided November 8, 1943.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. GEORGE K. THOMAS, Assist-
ant, for plaintiff in error.

Mr. IRA C. ROTHGERBER, Mr. WALTER M. APPEL, for
defendant in error.

*En Banc.*

MR. JUSTICE GOUDY delivered the opinion of the court.

THIS case involves a claim for refund of service tax paid under section 3, chapter 202, Session Laws of Colo. 1941, being section 3, chapter 148A, 1941 Cumulative Supplement to '35 C.S.A., which provides, inter alia: "Services rendered or performed as herein defined to a person engaged in rendering services taxable under this act or in selling tangible personal property subject to retail sales tax, provided that the cost of such services, directly or indirectly, enter into and become a part of the charges to the ultimate user or purchaser, shall be exempt; * * *."

The claim for refund of tax arose out of service taxes paid by the contractor for defendant in error, plaintiff below, to Carpenter, Director of Revenue, plaintiff in error, defendant below, the parties being hereinafter designated as plaintiff and defendant, for services rendered in the erection of a new building on Curtis street, in the City and County of Denver, upon ground held under a fifty-year lease, the building to revert to the landlord at the expiration of the lease period. The cost of the building is set up on the books of plaintiff as a capital asset for income tax purposes, plaintiff taking two per cent annual depreciation, so that at the end of the lease period the cost of the building will have been charged off.

The Director of Revenue refusing the claim, suit was filed in the district court of the City and County of Denver. After trial to the court, judgment was entered in favor of plaintiff. The matter is here by writ of error and application for supersedeas; both parties requesting final disposition on the application, we have elected to comply with the request.

Points relied upon by defendant as errors are: (1) The finding by the trial court as a fact that the cost of services rendered to plaintiff by the construction contractor entered into and became a part of the charges to the ultimate purchasers of tangible personal property sold by plaintiff, and subject to a retail sales tax; (2)

that plaintiff, having set up the cost of such services as a capital asset, is estopped to now claim exemption under the service tax law.

Proof of the right to exemption depends upon the testimony of one Galbasin, comptroller of plaintiff's Denver stores, and its only witness, who, in substance, stated:

Plaintiff is a New York corporation, with its principal executive office in St. Louis, Missouri, and is engaged in the operation of a number of large department stores throughout the country, of which the Denver store, operating as the May Company, is one. In Denver the company operates a small store under a short-term lease at 64 South Broadway, and also occupies three pieces of ground and the buildings located thereon, one at the corner of Sixteenth and Champa streets with a four-story building, one next to it on Champa street with a six-story building, and the third the new Curtis street property with a seven-story building, the latter two properties being under lease.

In 1940 a contract was let for the erection of the new Curtis street building, and for certain repairs on the old buildings. In determining prices, the company has monthly budgets covering all expenses, including rentals, depreciation and amortization of properties, especially those under lease, where, at the end of the lease period, the buildings on the leaseholds revert to the lessors. Included in the budgets will be the expenses and amortization of the Curtis street property, as well, of course, as the old properties. In Colorado, the business conducted by plaintiff is the retailing of men's and women's apparel, and other lines.

On cross-examination the witness stated: that he has charge of all the accounting at the Denver stores, except accounting for taxation purposes, including income taxes, which accounting is all consolidated with the parent organization, and the returns made from St. Louis; that he is not acquainted with the way the Colorado stores' taxes are set up; that while it is partially true that re-

tail prices are determined by elements of competition and working conditions in each community where selling, it certainly is a fact that all expenses incident to a business govern prices to a very substantial degree; that the depreciation on capital assets is figured into the price of a suit of clothes sold—that is, "we do not sit down and say that we get this much out of that one, but, certainly, if we know that it costs us, including rental and amortization, a certain percentage, we have to aim at covering that percentage with our merchandise." The cost of the building or reconstruction was carried on the Denver books while the reconstruction was taking place; then the costs were transferred to, and consolidated with, the books in St. Louis; that he would say that the cost of construction is set up on the books as more or less of a deferred expense figure, because in future years that will be allocated to this store, which must cover it. It comes back as a depreciation, a deferred expense charged back in future years, as an operating expense, which must be covered in the operation of the department store, and which is charged off monthly as a depreciation of capital assets into expense accounts. State income tax returns are prepared and filed by the St. Louis office, and the witness does not know whether any depreciation on account of those assets is taken in such returns. The determination of prices on a consignment of goods would depend upon whether or not the merchandise is fair-traded, which, of course, immediately sets the price. On the whole, whenever merchandise is bought, and it is possible to get additional profits, the stores, as retailers of merchandise, are actuated by the expense under which they are operating, and endeavor, when it is possible to do so and they are not limited by fair trading, to get enough profit into merchandise to cover all expenses, of which occupancy, into which function depreciation and amortization is charged, is one. Mark-up is the percentage of profit received on each particular piece of merchan-

dise, and varies according to market conditions, and whether the store wants to turn its stocks. The retailing of merchandise is not governed by a mark-up basis. The percentage of mark-up allocated to the cost of the building would vary with the volume of business in the store, and would not be any set percentage for any particular expense. The building cost is known, but how much merchandise is going to be sold in a month is not. The percentage of the building cost, which would be included in the retail price cannot be quoted, for the figure would be varied entirely by departments, and would depend upon how much floor space the department would occupy. It might not be included in some departments; some of them might even operate at a loss, but each department strives to cover its own expense. The company strives to cover the expense of the entire store and, in retailing merchandise as a whole, must, to make a profit, cover all expenses, including amortization. Under the very hectic times through which the company is now going it would be difficult to say whether it is getting an increased or a decreased markup, because it is so badly affected by government regulations that it no longer operates normally. It cannot possibly say whether its mark-up is higher or is lower by reason of the building now, because it is operating under conditions of which it had no idea when it erected the building; but in normal times, certainly, it would have to get more profit on its merchandise to cover the expense of the building.

In *Bedford v. Hartman Brothers,* 104 Colo. 190, 89 P. (2d) 584, we held that where a taxpayer claims an exemption under a taxing statute, the burden is on him to clearly establish the right to such exemption.

In *Bedford v. Colorado Fuel and Iron Corporation,* 102 Colo. 538, 81 P. (2d) 752, we held that tangible personal property which becomes an ingredient or component part of the product of a manufacturer is not subject to the payment of sales tax by it, but that machinery

484

and equipment purchased by it for use in its operations is subject to that tax. So here, the cost of services directly or indirectly entering into and becoming a part of the charges to the ultimate user or purchaser would be exempt. A review of the evidence in the record here presented convinces us that the attempted proof of such a fact by plaintiff is insufficient and does not clearly disclose that it is entitled to such exemption. It falls far short of that necessary to show that the service taxes paid by the contractor in erecting the Curtis street building, and repairing the old buildings, enters into and becomes a part of the charges to the ultimate consumer, upon which a retail sales tax would be paid.

It is unnecessary at this time to consider defendant's argument that because plaintiff sets up the cost of the building as a capital asset, and takes depreciation thereon for income tax purposes, it is estopped to urge exemption from service taxes.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of defendant.