No. 24516

Security Life and Accident Company, Academy Life Insurance Company, and Western Farm Bureau Life Insurance Company v. John H. Heckers, Executive Director of Revenue

(495 P.2d 225)

Decided March 20, 1972.

Dawson, Nagel, Sherman & Howard, Arthur K. Underwood, Jr., Donald W. Roe, for plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Harold L. Neufeld, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Security Life and Accident Co., Academy Life Insurance Co., and Western Farm Bureau Life Insurance Co., plaintiffs in error, filed claims for refunds of sale and use taxes paid by them pursuant to C.R.S. 1963, 138-5-1, *et seq.* The claims were filed with John H. Heckers, Executive Director of Revenue of the State of Colorado, who denied the claims. The District Court upon review affirmed the action of the Director. We find no error and likewise affirm.

The parties dispute the impact of 1965 Perm. Supp., C.R.S. 1963, 72-1-14 on the sales and use tax. In short, the issue is whether Section 72-1-14(1)(c), originally enacted in 1907, exempts insurance companies doing business in this state from the payment of sales and use taxes imposed by Sections 138-5-1 to 138-5-32 enacted in 1935. For the purposes of our discussion, the following portions of Section 72-1-14 are pertinent:

"(1)(a) All insurance companies doing business in this state shall pay to the Department of Revenue a tax of two and one-fourth percent on the gross amount of all premiums collected. . . ." (By the provisions of 72-1-3 this tax is to be used to pay "all expenses" of the insurance department.)

. . . .

"(1)(c) The taxes aforesaid shall constitute all taxes collectible under the laws of this state against any such insurance companies, and no other occupation tax or other taxes shall be levied or be collected from any insurance company by any county, city or town within this state, but this chapter shall not be construed to prohibit the levy and collection of state, county, school and municipal taxes upon the real and personal property of such companies."

It appears by stipulation that in the past the companies have paid both sales and use taxes on the purchase of articles which "were necessary, usual and proper for these companies in the life insurance business, but were not articles whose possession and use were peculiar to or limited to such life insurance companies." Further, Academy Life paid sales and use taxes on purchases until December, 1966; Western Farm Bureau Life until February, 1968; and Security Life and

Accident Company until March, 1968.

It is conceded that the companies' claim to exemption is based solely upon Section 72-1-14(1)(c) and not upon any express exemption contained in the sales and use tax law. *See* Sections 138-5-14 and 138-5-34.

 We start with the basic proposition that taxation is the rule and exemption therefrom the exception. The burden is on the taxpayer who claims an exemption to clearly establish the right to such exemption. *Weed v. Montfort Feed Lots, Inc.,* 156 Colo. 577, 402 P.2d 177; *Carpenter v. May Department Stores Company,* 111 Colo. 479, 143 P.2d 270; *Bedford v. Hartman Brothers, Inc.,* 104 Colo. 190, 89 P.2d 584; *Phipps v. Commissioner of Internal Revenue,* 91 F.2d 627, *cert. denied,* 302 U.S. 742, 58 S.Ct. 144, 82 L.Ed. 574, 112 A.L.R. 1441.

We must consider the history of the legislation and the administrative interpretation relevant to the legislation. In 1956 the Department of Revenue published a bulletin containing the "Retail Sales Tax and Use Tax Law, Revised and Amended, also Rules and Regulations Relating Thereto." Rule and Regulation No. 65 states:

"65. *Insurance Companies.* Since both the sales tax and the use tax are excise taxes on the sale or use of property rather than taxes on a business or occupation, insurance companies are not exempt from the tax on their purchases. . . ."

There is no suggestion that the insurance companies did anything other than acquiesce in the Rule 65 interpretation up to the filing of the claims for refund. This change of position by the companies occurred after the 1965 amendment of Section 72-1-14(1)(c). There was for a period of almost thirty years a general recognition, not only by the taxing authorities, but also by the taxpayers of the taxpayer's liability.

Similarly, the legislature acquiesced in this interpretation. On several occasions the legislature has amended the sales and use tax statutes without adding insurance companies to the list of entities exempted from those taxes. This fact likewise lends support to the interpretation of the Department of

Revenue as expressed by Rule 65. In a 1938 opinion in a case involving the sales tax law, on this particular point, this court stated:

"Further supporting our view in the matter is the circumstance that after the rule of construction promulgated by the treasurer had been in force for almost two years, the legislature reenacted the present sales tax law, Chapter 230, S.C. 1937, making no change whatever in section 2(n) of the Act. Likewise, no change in the provision here involved was made by the amendment of the Use Tax Act, S.L. 1937, p. 1075. Presumptively at the time the legislature adopted the 1937 Acts it was aware of the construction theretofore given the previous statutes and was satisfied therewith. These reenactments, therefore, in effect amounted to a legislative confirmation of the prior existing rules of interpretation." *Bedford v. Colorado Fuel & Iron Corporation,* 102 Colo. 538, 81 P.2d 752.

At the time the sales and use tax legislation was passed, the legislature was aware of the existence of Section 72-1-14(1)(c) ard in spite of that knowledge, sales and use taxes were imposed on *all* sales and purchases of property at retail; upon telephone and telegraph services; for gas and electric service; upon meals, food and public accommodations. The provisions for exemptions of certain commodities in the Sales and Use Tax Act do not cover the kinds of purchases here stipulated to, nor do the insurance companies fall within the classifications of the entities exempted under the Act. Sections 138-5-14, 138-5-34.

▮▮▮ Both sides agree that the provisions of any law or statute which are reenacted, amended or revised, so far as they remain the same, are to be construed as a continuation of such laws and not as new enactments. C.R.S. 1963, 135-1-4.

"It is our function in interpreting statutes. . . to ascertain and carry out the intent of the framers thereof. Contemporaneous construction of legislation, acquiesced in for many years by the authorities charged with its enforcement, is entitled to great weight in determining the intent of the framers. In the

absence of clear error such a long established construction should not be overturned or disregarded by this court." *Bowman v. Eldher,* 149 Colo. 551, 369 P.2d 977. *See also Schlagel v. Hoelsken,* 162 Colo. 142, 425 P.2d 39, *cert. denied* 389 U.S. 827, 88 S.Ct. 81, 19 L.Ed.2d 83; *Lavington v. Gano,* 112 Colo. 510, 150 P.2d 312.

▇ The insurance companies contend nevertheless that by the amendment of Section 72-1-14(1)(c) in 1965 expressly subjecting insurance companies to the special premium tax under the Medical Disaster Insurance Fund Act that this somehow shows an intent on the part of the legislature to exempt them from the sales and use tax.

This Act created a fund to defray medical expenses in excess of those covered by the Workmen's Compensation Act and the Occupational Disease Disability Act. It required "every person, partnership, association, corporation, . . . every mutual company or association, and every other insurance carrier, including the State Compensation Insurance Fund, insuring employers in this state against liability" under the Workmen's Compensation and the Occupational Disease Disability Act to pay a tax of one-half of one percent upon premiums received.

▇ At the same session the legislature amended Section 72-1-14(1)(c). The section remained exactly the same as it had been since 1913 except that the amendment added to the end of the section as it appears above, the following: "Nor shall it include or prohibit the levy and collection of a tax to be paid on net Workmen's Compensation and occupational disease disability premiums as provided under the Colorado Medical Disaster Insurance Fund Act."

The insurance companies argue that the legislature could have ignored the exemption statute in 1965 when it passed the new special premium tax and the exemption statute would have constituted no bar to the imposition of this later tax if the legislature did not believe the exemption was applicable to *all* future taxes. We do not believe this to have been the lgislature's intent. The only intent which can be gleaned from the amendment of Section 72-1-14(1)(c) is that

the legislature wanted to make it perfectly clear that the payment of the tax on premiums collected under Section 72-1-14(1)(a) for the operation of the department was not to be interpreted as exempting the tax on premiums collected under the Medical Disaster Insurance Fund Act by those insurance companies which write Workmen's Compensation insurance.

Another act of the legislature suggests that this was the legislature's understanding of the tax exemption status of insurance companies by virtue of Section 72-1-14(1)(c). This is the Income Tax Act, C.R.S. 1963, 138-1-1, *et seq.,* originally enacted in 1937 as House Bill No. 148 (Session Laws 1948, p. 687). Section 3 lists the exempt corporations. Subparagraph (10): "Insurance Companies."

The year 1937 was two years following the enactment of the sales tax and the same year that the use tax was enacted. The obvious reason for the legislature to specifically exempt insurance companies from the income tax was that it did not consider them to be exempt under the general terms of Section 72-1-14(1)(c). We are of the opinion that Section 72-1-14(1)(c) was intended to exempt insurance companies from taxes which were specifically mentioned and those which were in general use at the time.

The leading case on this point is *Connecticut Light & Power Co. v. Walsh,* 134 Conn. 295, 57 A.2d 128, 1 A.L.R.2d 453. The Connecticut exemption statute, passed in 1913, stated that the gross earnings tax should be in "lieu of all other taxation" imposed upon utility companies. Subsequently, Connecticut enacted a sales and use tax law from which the Connecticut Light and Power Co. claimed to be exempt by reason of the gross earnings tax exemption, just as the insurance companies are doing here. The Supreme Court of Connecticut there said:

"Sales and use taxes, if any existed in 1913 and 1915, were certainly not generally known, and it cannot be assumed that the legislature, in providing that the gross earnings taxes imposed in those years should be in lieu of all taxation of that nature which might at some future day be imposed by it,

meant to include them. The use tax is in its nature entirely foreign to those which the general assembly had in mind when the act of 1913 was adopted."

It is significant to note that sales to the United States Government and to the State of Colorado, its departments and institutions and political subdivisions thereof are exempt under the provisions of the sales and use tax *only* where they are to be used by them in their "governmental capacities." As to religious and charitable organizations, only those purchases which are for use in the conduct of their regular religious and charitable functions and activities are exempt from the tax.

From the foregoing it seems clear to us that in 1907 when the general assembly was enacting a law to regulate insurance companies and imposing a tax to finance that regulation and not for the purpose of raising money for general governmental purposes, it did not intend to exempt insurance companies from all future taxes needed to meet the general requirements of government, especially where the type of tax was unknown to them. It is also clearly apparent that in enacting the sales and use tax law, it was not the legislative intent to include insurance companies within the governmental or religious and charitable categories exempted in that law.

If the legislature had intended to exempt insurance companies from the sales and use taxes in 1965, it would have been a simple matter for it to have amended the appropriate sections of the Sales and Use Tax Act. Not having elected to do so, we cannot by construction do so.

The judgment is affirmed.

MR. JUSTICE ERICKSON not participating.