**WOODMEN OF THE WORLD AND/OR ASSURED LIFE ASSOCIATION,**
Plaintiff–Appellee,

v.

**COLORADO DEPARTMENT OF REVE- NUE;** John J. Tipton, in his official capacity as the Executive Director of the Colorado Department of Revenue; and Amelie A. Buchanan, in her official capacity as the Deputy Director of the Colorado Department of Revenue, De- fendants–Appellants.

No. 93CA1263.

Colorado Court of Appeals,
Div. V.

Nov. 3, 1994.

Rehearing Denied Dec. 8, 1994.

Certiorari Granted May 8, 1995.

Holland and Hart, Alan Poe, Rachel A. Yates, Denver, for plaintiff-appellee.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert C. Ripple, Asst. Atty. Gen., Denver, for defendants-appellants.

Opinion by Judge TAUBMAN.

Defendant, the Department of Revenue (Department), appeals the trial court's decision that plaintiff, Woodmen of the World and/or Assured Life Association (Woodmen), is exempt from paying Colorado sales and use taxes. The question presented is whether the exemption from the taxation for fraternal benefit societies enacted in 1911 extends to sales and use taxes which were first imposed in 1935. We conclude that fraternal benefit societies are exempt from sales and use taxes and, therefore, affirm.

## I.

Woodmen is a fraternal benefit society, as defined by § 10–14–101, et seq., C.R.S. (1994 Repl.Vol. 4A), which provides for the payment of death and other benefits to its members and their beneficiaries. The Department issued letters to Woodmen in 1944 and 1978 stating that it was exempt from payment of sales and use tax and issued it Certificates of Exemption in 1979 and 1988.

However, in 1990, the Department advised Woodmen that it did not satisfy the "charitable" requirements of § 39–26–102(2.5), C.R.S. (1994 Repl.Vol. 16B), that its sales tax exemption had been revoked, and that future purchases would be subject to sales tax. The Department did not identify any changes in Woodmen's organizational structure or operations, nor did it identify any change in the applicable statutes as justification for the revocation. Rather, the revocation was apparently based on a change in the Department's interpretation and application of existing statutes.

Woodmen protested the revocation claiming that as a fraternal benefit society it was exempt from all taxation, except real estate and office equipment taxes, under the provision then codified as § 10–14–133, C.R.S. (*see* Colo.Sess.Laws 1993, ch. 167 amending and recodifying this provision as § 10–14–504, C.R.S. (1994 Repl.Vol. 4A)). Woodmen began paying sales taxes but later filed a claim for refund. The Department denied Woodmen's claim for refund. Woodmen protested the denial and requested a final determination pursuant to §§ 39–21–103 and 39–21–104, C.R.S. (1994 Repl.Vol. 16B). In its final determination, the Department concluded that Woodmen was not a "charitable organization" and was not otherwise exempted from paying sales and use taxes.

On appeal to the district court pursuant to § 39–21–105, C.R.S. (1994 Repl.Vol. 16B), the parties filed cross-motions for summary judgment. The trial court ruled that Woodmen is not a "charitable organization" exempt from sales and use taxes under § 39–26–102(2.5), but that under § 10–14–133, then in effect, as a fraternal benefit society, it is exempt from all taxation, including sales and use taxes. Woodmen has not appealed the trial court's determination that it is not exempt from sales and use taxes as a charitable organization.

## II.

The only issue before us is the Department's contention that the exemption from taxation for fraternal benefit societies under § 10–14–133 does not apply to sales and use taxes.

In 1911, the General Assembly enacted legislation exempting fraternal benefit societies from all state, municipal, and school taxes except those on real estate and office equipment.

This 1911 enactment, until its recodification in 1993, read as follows:

Every fraternal benefit society organized or licensed under this article is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from *all* state, county, district, municipal and school *taxes*, other than taxes

on real estate and office equipment. (emphasis added)

However, at that time certain taxes common today, including income, sales, and use taxes, were not in existence. The Department contends that the exemption should not be construed to apply to sales and use taxes. We are not persuaded.

## A.

Despite the unequivocal language of this provision exempting fraternal benefit societies from *all* state taxes, except those on real estate and office equipment, the Department contends that the tax exemption granted to fraternal benefit societies in 1911 extended only to taxes then in existence.

■ In construing statutes, courts are to be guided by legislative intent. To ascertain legislative intent, courts must interpret words and phrases in statutes according to their plain and ordinary meanings. *American Respiratory Care Services v. Manager of Revenue*, 835 P.2d 623 (Colo.App.1992). In addition, a reviewing court should give deference to the construction of statutes by administrative officials charged with their enforcement.

■ When an administrative interpretation is longstanding, administrative construction is entitled to even greater deference. *Hewlett–Packard Co. v. State*, 749 P.2d 400 (Colo.1988). And, if there is a contemporaneous interpretation of a statute by an administrative agency charged with the responsibility of applying that statute, the agency's interpretation should be granted significant weight by the courts. This is not true of a subsequent contradictory interpretation. *Adams v. Department of Social Services*, 824 P.2d 83 (Colo.App.1991).

■ In this case, the General Assembly declared that, except for two specific listed taxes, fraternal benefit societies are exempt from "all" state taxes. Here, "all" is an unambiguous term and we interpret it in accordance with its commonly understood meaning. *O'Brien v. Village Land Co.*, 780 P.2d 1 (Colo.App.1988).

For more than 45 years the Department interpreted the statute as exempting Woodmen from paying sales and use taxes. From the inception of the sales tax in 1935 through 1990, the Department made no attempt to require Woodmen to pay sales or use taxes, and it issued formal documents in 1944, 1978, 1979, and 1988 consistent with that exemption. Hence, that longstanding interpretation is entitled to significant weight in any determination of legislative intent.

Nonetheless, relying on *Security Life & Accident Co. v. Heckers,* 177 Colo. 455, 495 P.2d 225 (1972), and *Southwest Catholic Credit Union v. Charnes,* 665 P.2d 626 (Colo. App.1982), the Department contends that the statutory exemption from all state taxes granted to fraternal benefit societies does not apply to sales and use taxes. However, we conclude those cases are distinguishable.

In *Security Life & Accident Co. v. Heckers, supra,* the supreme court held that a statute imposing a premium tax on insurance companies in lieu of all other taxes did not exempt insurance companies from the subsequently enacted sales tax. The tax exemption provided to the insurance companies was a substitute for the other taxes. The court determined that the General Assembly's *quid pro quo* for the imposition of the premium tax was only an exemption from taxes then in existence and was not an exemption from all future taxes, particularly taxes not then known to the General Assembly. Furthermore, the Department's own regulation was based entirely on the "in lieu of" nature of the premium tax and the notion that the *quid pro quo* for the imposition of the premium tax could not be construed to include exemptions from all future taxes. In addition, the tax exemption relied on by the insurance companies did not specifically mention state taxes, such as sales taxes.

The *Southwest Catholic Credit Union* decision rested entirely on the rationale of *Security Life & Accident Co. v. Heckers, supra.*

By contrast, the fraternal benefit societies' tax exemption statute does not impose a premium tax or other "in lieu of" tax, and the tax exemption granted to fraternal benefit societies is not a *quid pro quo* for some other form of tax. Instead, the express reason underlying the tax exemption for the fraternal benefit societies is stated in § 10–14–133 as being because of their charitable and benevolent nature.

In *Security Life* the supreme court relied heavily on the Department's longstanding regulation which provided that insurance companies were not exempt from sales tax. For nearly thirty years, the insurance companies had acquiesced in the Department's interpretation.

The situation in this case is exactly opposite. Here, the trial court determined that both the Department and Woodmen acquiesced in an interpretation that fraternal benefit societies were exempt from sales tax for a period in excess of 45 years. As early as 1944, the Department advised Woodmen that it was exempt from sales tax. Since the initial recognition of Woodmen as an organization exempt from state sales tax, the Department repeatedly reaffirmed Woodmen's exempt status. Thus, the trial court properly gave deference to the Department's longstanding interpretation. *See Hewlett–Packard Co. v. State, supra.*

### B.

The Department next contends there is no evidence in the record demonstrating that it considered Woodmen to be exempt from payment of sales taxes simply because it is a fraternal benefit society. The Department suggests that Woodmen's exempt status may have been based on prior language in the sales tax statute exempting eleemosynary organizations from sales tax. However, that language was amended in 1978, a full year before the Department issued the 1979 Certificate of Exemption to Woodmen and ten years before it issued the last exemption certificate to Woodmen. *See* Colo.Sess.Laws 1978, ch. 113, § 39–26–114(1)(a)(II) at 506.

In addition, in both *Security Life* and *Southwest Catholic Credit Union,* the courts struggled with an apparent conflict between the statutes upon which the taxpayers relied and the sales tax statute, which did not specifically exempt insurance companies or credit unions. That apparent conflict does not exist here.

■ The state tax exemption granted to fraternal benefit societies is based on the legislative declaration that such organizations are charitable and benevolent institutions. We agree with the trial court's analysis that, although Woodmen is not a "charitable organization" under § 39–26–102(2.5), it is a "charitable and benevolent institution" as designated by the General Assembly in § 10–14–133. Also, since its adoption, the state sales tax statute has contained a specific exemption for sales which the state is prohibited from taxing under other laws of the state. *See* § 39–26–114(1)(a)(III), C.R.S. (1994 Repl.Vol. 16B). The trial court reasoned that § 10–14–133, as a special provision concerning taxation, prevailed over the general sales tax enactment. Therefore, the adoption of the sales tax statute did not conflict with the fraternal benefit society tax exemption statute, as in *Security Life* and *Southwest Catholic Credit Union*. We agree with this analysis.

### C.

Relying on *Security Life*, the Department next contends that the General Assembly's enactment of Colorado's Income Tax Act in 1937 suggested its intent not to exempt fraternal benefit societies from sales and use taxes. In 1937, the General Assembly expressly exempted fraternal benefit societies from income taxes. Colo.Sess.Laws 1937, ch. 175 at 683. Hence, the Department argues that there would have been no need to provide an exemption from income taxes if the general exemption enacted in 1911 had been intended to apply to all future taxes.

■ However, where separate clauses in the same statutory scheme may be reconciled by one construction, but would conflict under a different interpretation, the construction resulting in harmony rather than inconsistency should be adopted. *Bitts v. Board of Adjustment*, 765 P.2d 1077 (Colo. App.1988). Also, an appellate court should construe statutes related to the same subject matter *in pari materia*, in order to give consistent, harmonious, and sensible effect to all of their parts. *Yuma County Board of Equalization v. Cabot Petroleum Corp.*, 856 P.2d 844 (Colo.1993). Courts must strictly construe taxing power and taxing acts in favor of the taxpayer and against the taxing authority. *Tenney v. Board of Assessment Appeals*, 856 P.2d 89 (Colo.App.1993).

■ Here, the general exemption enacted in 1911 and the subsequently enacted income tax both possess provisions regarding fraternal benefit societies, and they must be construed harmoniously in favor of the taxpayer. Accordingly, we conclude that the later enacted income tax act reaffirmed the General Assembly's intent as to the broad sweep of the exemption.

Finally, any doubt existing about the General Assembly's intent in granting an exemption from all state taxes to fraternal benefit societies was resolved in 1993 when the General Assembly amended the fraternal benefit society tax exemption statute. *See* Colo. Sess.Laws 1993, ch. 167, § 10–14–504 at 603. The statutory exemption (recodifying entire statute governing fraternal benefit societies) at issue was amended to read:

> Every society organized or licensed under this article is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from *all and every* state, county, district, municipal, and school *tax* other than taxes on real estate and office equipment.

Section 10–14–504, C.R.S. (1994 Repl.Vol. 4A) (emphasis added).

Not only did the General Assembly reaffirm the exemption of fraternal benefit societies from "all" state taxes, it further strengthened the statutory language by providing the exemption applied to "all and every" state tax.

■ The General Assembly is presumed to be cognizant of prior judicial interpretation of the statute under inquiry. *State Engineer v. Castle Meadows, Inc.*, 856 P.2d 496 (Colo.1993). Thus, when a statute is amended it is presumed that the General Assembly intended to change the law.

However, this presumption may be rebutted when more specific language is added, thereby indicating the General Assembly's intention to clarify the statute. *Robles v. People*, 811 P.2d 804 (Colo.1991). We reject

the Department's assertions at oral argument that the 1993 amendments did neither.

■ We must presume that the General Assembly was aware of the *Security Life* decision and the existence of sales taxes. Nevertheless, it amended the statute. Accordingly, we conclude that the 1993 amendment clarified the statute to overrule the Department's 1990 interpretation of § 10–14–133.

Here, the General Assembly added the language "and every" to "all." Thus, if the General Assembly knew of the Department's 1990 change in its interpretation of § 10–14–133, the 1993 amendment repudiated it. Conversely, if the General Assembly did not have knowledge of the Department's change in interpretation, the amendment was intended to clarify the former statute.

In summary, we conclude that Woodmen is exempt from sales and use taxes.

Judgment affirmed.

RULAND, J., concurs.

BRIGGS, J., dissents.

BRIGGS, Judge, dissenting.

In my view, under controlling precedent and properly applied rules of statutory construction, the statutory exemption from taxation for fraternal benefit societies does not extend to sales and use taxes. I therefore respectfully dissent.

The supreme court addressed a similar claim of exemption in *Security Life & Accident Co. v. Heckers*, 177 Colo. 455, 495 P.2d 225 (1972). The issue there was whether a statute enacted in 1907 that exempted insurance companies from taxation, except for a tax on insurance premiums, applied so as to exempt insurance companies from sales and use taxes first imposed in 1935. The court concluded it did not.

The court in *Security Life* began with the basic proposition that taxation is the rule and exemption the exception. The burden is on the taxpayer to establish the right to an exemption.

In rejecting the claim for exemption, the supreme court noted that at the time the sales and use tax legislation was passed, the General Assembly was aware of the existence of the tax exemption for insurance companies. However, even though other exemptions from sales and use taxes were included in the legislation, none was included for insurance companies.

The enactment of an Income Tax Act in 1937 further suggested to the court an intent not to exempt insurance companies from sales and use taxes. In that act, the General Assembly had specifically exempted insurance companies from income taxes. The court in *Security Life* reasoned that, if the general exemption enacted in 1911 had been intended to apply to all future taxes, there would have been no need to include an exemption from income taxes:

> From the foregoing it seems clear to us that in 1907 when the general assembly was enacting a law to regulate insurance companies and imposing a tax to finance that regulation and not for the purpose of raising money for general governmental purposes, it did not intend to exempt insurance companies from all future taxes needed to meet the general requirements of government, especially where the type of tax was unknown to them.

*Security Life & Accident Co. v. Heckers, supra*, 177 Colo. at 462, 495 P.2d at 225.

Ten years later, in *Southwest Catholic Credit Union v. Charnes*, 665 P.2d 626 (Colo. App.1982), a division of this court addressed a similar challenge to sales taxes by a credit union. The court followed the rationale of *Security Life* to conclude that a tax exemption for credit unions did not extend to the later-enacted sales tax.

The General Assembly has taken no action in response to the decisions in *Security Life* and *Southwest Catholic Credit Union* to exempt insurance companies or credit unions from sales and use taxes. We may therefore presume that the General Assembly has acquiesced in these interpretations. *See* 2A N.J. Singer, *Sutherland Statutory Construction* § 45.12 (5th ed. 1992); *cf. Security Life & Accident Co. v. Heckers, supra.*

As with insurance companies and credit unions, the General Assembly did not include

an exemption in the sales and use tax legislation for fraternal benefit societies but did include an exemption from the income tax. *See* Colo.Sess.Laws 1937, ch. 175 at 683; § 39–22–112(1), C.R.S. (1994 Repl.Vol. 16B). The exemption from income taxes would have been unnecessary if fraternal benefit societies were already exempt. *See Security Life and Accident Co. v. Heckers, supra.*

The majority reasons that the statute exempting insurance companies from taxes contained an exception for taxes on premiums and that the *"quid pro quo"* was an exemption only from taxes then in existence. However, the tax on premiums is not a general fund tax. As the supreme court recognized, "the general assembly was enacting a law to regulate insurance companies and imposing a tax to finance that regulation and not for the purpose of raising money for general governmental purposes." *Security Life & Accident Co. v. Heckers, supra,* 177 Colo. at 462, 495 P.2d at 229.

Furthermore, fraternal benefit societies are subject to taxes on real estate owned, the same exception from exemption provided for credit unions. *See Southwest Catholic Credit Union v. Charnes, supra.* The argument thus fails to suggest any meaningful distinction in the supposed *"quid pro quo"* for fraternal benefit societies from that for insurance companies and credit unions.

The argument also fails to take into account that Woodmen did not appeal the trial court's determination that fraternal benefit societies are not exempt from sales and use taxes as "charitable organizations" under § 39–26–102(2.5), C.R.S. (1994 Repl.Vol. 6B). Indeed, the majority concludes that fraternal benefit societies, like insurance companies and credit unions, are not exempt from taxation as charitable organizations.

The majority then turns to rules of statutory construction. It begins by correctly recognizing the rule, also noted by the supreme court in *Security Life,* that an administrative interpretation is entitled to deference, with greater deference to be accorded to an interpretation that is longstanding. This is because the failure to repeal the administrative interpretation by statutory amendment is persuasive evidence that the

interpretation was intended by the General Assembly. *See Hewlett–Packard Co. v. State,* 749 P.2d 400 (Colo.1988).

The circumstances here, however, differ from those present in *Security Life.* In that case, the agency's interpretation was in the form of a published bulletin. Here, however, the Department's interpretation was expressed only in correspondence directly with Woodmen. It is not at all clear how the General Assembly can be presumed to have had knowledge of that correspondence, knowledge which is required if we are then to presume that legislative inaction amounted to deference to the interpretation contained in the correspondence.

More importantly, the Department has changed its interpretation. The Department's records do not indicate whether Woodmen's prior sales tax exemption had been based on the exemption from taxation for fraternal benefit societies, on the charitable organization exemption within the sales tax statute, or on some other basis. Even if it could be assumed that the Department relied at least in part on the exemption for fraternal benefit societies, the Department changed its interpretation in 1990 and since then has consistently taken the position that fraternal benefit societies are not exempt from sales and use taxes.

The majority correctly states its second rule of statutory construction: when administrative officials have construed a statute in a nonuniform manner, we need not extend deference to the current agency interpretation. However, contrary to the suggestion in the majority's analysis, when, as here, the Department has changed its interpretation, we have no need to extend deference to the discarded interpretation, however long it may have stood. Rather, our task then is to conduct an independent analysis of the statutory scheme. *Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990). That independent analysis leaves the precedent of *Security Life* and *Southwest Catholic Credit Union* still firmly controlling.

The majority next correctly observes that, to ascertain legislative intent, we must interpret words and phrases in statutes according

to their plain and ordinary meanings. However, the statutory exemptions for insurance companies and credit unions, which were construed in *Security Life* and *Southwest Catholic Credit Union* not to extend to sales and use taxes, were no more ambiguous than the statutory exemption for fraternal benefit societies. Thus, reliance solely on the wording of the statute would require that we ignore precedent from our supreme court.

The majority finally relies on the 1993 amendment to the statute to conclude that the General Assembly intended to clarify that the exemption always did and still does apply to sales and use taxes. It reaches this conclusion because the statutory exemption for fraternal benefit societies, which had previously exempted "all state, county, district, municipal, and school taxes, other than taxes on real estate and office equipment," was amended to exempt "all *and every* state, county district, municipal, and school tax other than taxes on real estate and office equipment." Section 10–14–504, C.R.S. (1994 Repl.Vol. 4A) (emphasis added).

However, as the majority notes, "all" in the context here is an unambiguous term. It means "the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'" *Hudgeons v. Tenneco Oil Co.,* 796 P.2d 21, 23 (Colo.App.1990). Likewise, "every" is defined as "being each individual or part of a class or group whether definite or indefinite in number without exception." *Webster's Third New International Dictionary* 788. Because the plain meanings of "all" and "every" are practically identical, the change in wording alone does not clarify the legislative intent as to the scope of the exemption.

Faced with the resulting ambiguity, the majority relies on rules of construction regarding statutory amendments to determine that the 1993 amendment was a clarification. It then concludes from this that the purpose was to clarify that fraternal benefit societies have always been exempt from sales taxes.

However, if a statute is ambiguous, the court may consider, among other things, the legislative history. Section 2–4–203(1)(c), C.R.S. (1980 Repl.Vol. 1B); *see Passamano*

*v. Travelers Indemnity Co.,* 882 P.2d 1312, 1319 (Colo.1994) ("An examination of relevant legislative history frequently proves most beneficial in ascertaining the intent of the General Assembly."). Likewise, in determining whether an amendment was intended as a change or a mere clarification, it is the legislative history which often provides the clearest expression of legislative intent. *See Rickstrew v. People,* 822 P.2d 505, 508 (Colo. 1991) ("That the amendment was a clarification is indicated by the legislative history of a closely related statute."); *Darby v. All J Land & Rental Co.,* 821 P.2d 297 (Colo.1991) (because meaning of amendment not clear, supreme court looked to legislative history).

Here, the amendment was part of numerous amendments to the statutes regulating fraternal benefit societies. The legislative history indicates that these revisions were made merely to keep up with changes in the insurance industry, *see* Hearings on S.B. 93–72 before the House Committee on Business Affairs & Labor, 59th General Assembly, First Session (March 4, 1993) (comments of Rep. Michelle Lawrence), and to conform the statutory scheme to a model act proposed by a national organization of fraternal benefit societies. *See* Hearings on S.B. 93–72 before the Senate Committee on Business & Labor, 59th General Assembly, First Session (January 20, 1993) (comments of Mr. Marck Cobb).

Thus, the history indicates that the revision in § 10–14–133 was part of a package of amendments enacted for the sake of interstate uniformity. As a result, while the majority may be correct that the intent was to clarify the law, not make a substantive change, *see Amax, Inc. v. Grand County Board of Equalization,* 892 P.2d 409 (Colo. App.1994), the clarification was unrelated to the scope of the exemption. This leaves us with the controlling precedent of *Security Life* and *Southwest Catholic Credit Union* still securely in place.

For these reasons I would reverse and remand the cause to the district court for reinstatement of the Department's final determination.