**TELLURIDE RESORT AND SPA, L.P.,**
**a Delaware limited partnership,**
**Petitioner,**

v.

**COLORADO DEPARTMENT**
**OF REVENUE, State of**
**Colorado, Respondent.**

No. 00SC704.

Supreme Court of Colorado,
En Banc.

Feb. 11, 2002.

---

Kutak Rock, M. Lou Raders, John H. Bernstein, Craig N. Johnson, Denver, CO, Attorneys for Petitioner Telluride Resort and Spa, L.P., a Delaware limited partnership.

Office of the Attorney General, Ken Salazar, Attorney General, Carolyn Lievers, Assistant Attorney General, Denver, CO, Attorneys for the Colorado Department of Revenue, State of Colorado.

Justice HOBBS delivered the Opinion of the Court.

In this decision, we affirm the court of appeals judgment upholding a sales tax assessment by the Colorado Department of Revenue (the Department). *See Telluride Resort & Spa v. Colo. Dept. of Rev.*, 20 P.3d 1212 (Colo.App.2000).

The Department determined that: (1) Telluride Resort and Spa, L.P., a Delaware limited partnership (Telluride), had purchased an ongoing hotel business; and (2) owed state and county sales taxes on hotel furniture, fixtures, equipment, and supplies (the personal property) totaling $175,680.11, together with $69,690.10 in interest. Telluride paid the taxes under protest and seeks refund of the entire amount, based on section 39–26–102(10)(j), 11 C.R.S. (2001)(exempting from the terms "sale" or "sale and purchase" the "repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder").[1]

We hold that Telluride did not qualify for the section 39–26–102(10)(j) sales tax exception, because it did not repossess the personal property as a chattel mortgage holder or a foreclosing lienholder. Instead, Telluride purchased its interest in the personal property from Sumitomo Trust and Banking Company, Ltd. (Sumitomo), the holder of the public trustee's certificate of purchase resulting from a foreclosure and public sale of the real and personal property. Sumitomo was the foreclosing lienholder, not Telluride; accordingly, the Department and the court of appeals correctly ruled that the Sumitomo/Telluride transaction was a subsequent sale and constituted a taxable event for personal property sales tax purposes.

## I.

This sales tax matter arises out of the public trustee foreclosure sale of hotel property in San Miguel County, Colorado. Telluride Doral Resort and Spa Associates, L.P. (Doral), which is not a party to this case, owned the former Doral Hotel and related personal property in Telluride, Colorado.

Doral mortgaged its hotel, the personal property in the hotel, and the real property underlying the hotel to Sumitomo. When Doral defaulted on its debt obligations in April of 1993, Sumitomo commenced foreclosure proceedings through the public trustee. Sumitomo emerged as the successful bidder at the public sale on June 16, 1993 and received a certificate of purchase from the public trustee identifying Sumitomo as the lienholder and successful purchaser.

On August 27, 1993, Telluride purchased all of Sumitomo's interest in the real and personal property. Sumitomo's endorsement on the certificate of purchase to Telluride reads as follows:

*For good and valuable consideration,* the receipt of which is hereby acknowledged,

---

1. Telluride's issues on certiorari review are:
 1. Whether the assignment of a public trustee's certificate of purchase, as expressly authorized by 38–38–403, 10 C.R.S. (1999), can constitute a taxable sale and purchase of tangible personal property for purposes of 39–26–104(1)(a), 11 C.R.S. (1999)?

2. Whether, in a public trustee foreclosure, any holder of a certificate of purchase can acquire title to the property prior to the expiration of the statutory redemption period?

the *undersigned does hereby transfer, assign and set over to Telluride ... and to* the heirs, personal representatives, successors and assigns of the assignee forever, *all the right, title and interest in and to the within and foregoing instrument, and the property therein described, without recourse.*

The Sumitomo Trust & Banking Co., Ltd.

(Emphasis added.) In light of this endorsement, the public trustee issued a public trustee's deed for the real and personal property to Telluride on September 29, 1993 after the redemption period had expired.

The Department determined that Telluride had purchased an ongoing business and assessed state and county sales taxes on the personal property Sumitomo sold to Telluride. The assessment was for $131,760.11 in state sales tax, plus interest in the amount of $13,385.37, and $43,920.00 in San Miguel County sales tax, plus interest in the amount of $4,465.04.

Telluride paid the assessment under protest, arguing that: (1) no sale and purchase had occurred between it and Sumitomo; and (2) if a sale and purchase had occurred, it was exempt from sales tax under section 39–26–102(10)(j) because Telluride became the lienholder in foreclosure by virtue of Sumitomo's assignment of the certificate of purchase.

The Department determined that Sumitomo's purchase from the public trustee was exempt from being a sale and purchase under section 39–26–102(10)(j) because Sumitomo was the foreclosing lienholder. However, the Department found that Telluride had engaged in a taxable personal property transaction with Sumitomo because Telluride had:

exchanged cash for the outstanding notes between Doral and Sumitomo and for possession of the real and personal property Sumitomo purchased at the public trustee's foreclosure sale. There were two separate transactions: a foreclosure sale and a subsequent resale to Telluride.

As to possible exemption from taxation under the tax code, the Department found, "At no time at issue in this dispute did Telluride

foreclose on Doral or foreclose the lien it purchased from Sumitomo." Interpreting the statute, the Department therefore concluded that "Telluride cannot place its purchase from Sumitomo within the ambit of section 39–26–102(10)(j)."

Telluride appealed to the District Court for the City and County of Denver (District Court). In the District Court, the parties stipulated that Doral was indebted to Sumitomo in the amount of $74,000,000.00, which was secured by a wraparound deed of trust consolidating previously existing debt instruments. Sumitomo was the successful bidder at the public trustee's sale by virtue of its credit bid of $29,000,000.00. This left an outstanding deficiency balance owing to Sumitomo after the foreclosure. The record does not disclose what amount Telluride paid to Sumitomo for acquiring Sumitomo's interest in the property.

The District Court ordered the Department to refund the $175,680.11 in tax and $70,800.61 in interest, together with interest as provided in section 39–21–110.5. The District Court reasoned that Telluride, by virtue of Sumitomo's assignment of the certificate of purchase to it, had assumed Sumitomo's place as lienholder and was entitled to the section 39–26–102(10)(j) exception to the "sale and purchase" definition of section 39–26–102(10).

Section 39–26–102(10) and the exception at issue here provide as follows:

"Sale" or "sale and purchase" includes installment and credit sales and the exchange of property as well as the sale thereof for money; every such transaction, conditional or otherwise, for a consideration, constituting a sale; and the sale or furnishing of electrical energy, gas, steam, telephone, or telegraph services taxable under the terms of this article. Neither term includes:

. . . .

(j) The repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder.

§ 39–26–102(10)(j).

The court of appeals reversed the District Court. It reasoned:

The subsequent transfer of Doral's ownership interest in the personal property to Telluride by a transfer of the certificate and assignment of Sumitomo's security interest was a "sale" within the meaning of § 39–26–102(10). We reach that conclusion because Telluride had no interest in the personal property prior to the assignment of the certificate together with the promissory notes, security interests, and deeds of trust. Telluride was not a chattel mortgage holder or lienholder at the time of the foreclosure sale, thus § 39–26–102(10)(j) does not take the transfer out of the definition of "sale."

*Telluride Resort & Spa,* 20 P.3d at 1215.

The court of appeals' reasoning is persuasive and its legal conclusion correct. Telluride is not entitled to the refund it seeks.

## II.

■ We hold that Telluride did not qualify for the section 39–26–102(10)(j) sales tax exception, because it did not repossess the personal property as a chattel mortgage holder or a foreclosing lienholder. Instead, Telluride purchased its interest in the personal property from Sumitomo, the holder of the public trustee's certificate of purchase resulting from a foreclosure and public sale of the real and personal property. Sumitomo was the foreclosing lienholder, not Telluride; accordingly, the Department and the court of appeals correctly ruled that the Sumitomo/Telluride transaction was a subsequent sale and purchase and constituted a taxable event for personal property sales tax purposes.

### A.

#### Standard of Review

■ In taxation matters, we commence our analysis with the statutory provisions. *City & County of Denver v. Bd. of Assessment Appeals,* 30 P.3d 177, 180 (Colo.2001). We afford the statutory language its ordinary and common meaning, giving effect to every term and provision, including legislative definitions, while harmonizing potentially conflicting provisions, if possible. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19

P.3d 1263, 1273 (Colo.2001). Unless the statutes and the constitution place the property within a stated category of exemption, we resolve doubts regarding the meaning of statutes and the constitution in favor of subjecting the property to payment of its fair proportion of taxation. *Id.*

■ Accordingly, we presume that taxation is the rule and exemption from taxation is the exception. *Sec. Life & Accident Co. v. Heckers,* 177 Colo. 455, 458, 495 P.2d 225, 226 (1972). The absence of an express exemption indicates a legislative intent to tax. *Colo. Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806, 811 (Colo.1996). The taxpayer has the burden of proving entitlement to the exemption claimed. *Sec. Life & Accident Co.,* 177 Colo. at 458, 495 P.2d at 226.

■ In carrying out its responsibilities, the Department must construe and apply the statutes it administers. *Id.* at 458–59, 495 P.2d at 225–27. Because the matter before us in this case is a question of law, our review is de novo. We consider the Department's interpretation in construing the statutes; however, the executive agency's construction is advisory, not binding. *Ingram v. Cooper,* 698 P.2d 1314, 1316 (Colo.1985); *Travelers Indemn. Co. v. Barnes,* 191 Colo. 278, 282, 552 P.2d 300, 303 (1976).

### B.

#### The Sumitomo/Telluride Transaction

The Uniform Commercial Code generally governs security interests in personal property in their creation, perfection, and enforcement. §§ 4–9–101 to –709, 2 C.R.S. (2001). In cases where the security agreement covers both real estate and personal property, however, the secured party may exercise its rights regarding the personal property pursuant to the procedures governing real estate. § 4–9–604(a)(2), 2 C.R.S. (2001).

In this case, the parties agree that the public trustee's foreclosure sale included the hotel personal property pursuant to section 4–9–604(a)(2). The parties also agree that the certificate of purchase the public trustee

issued to Sumitomo, followed by Sumitomo's sale of the certificate to Telluride and the public trustee's consequent issuance of a deed to Telluride, conveyed Doral's interest in the hotel personal property, as well as the real property. Sumitomo conveyed its property interest through endorsement of the certificate of purchase to Telluride.

The question is whether the Sumitomo/Telluride transaction was a taxable event for sales tax purposes. The Department has the authority to tax the sale and purchase of tangible personal property, valued by its sale price. *A.D. Store Co., Inc. v. Executive Dir. of Dep't of Revenue*, 19 P.3d 680, 682 (Colo. 2001). The statute provides that the Department shall collect a tax on "all sales and purchases of tangible personal property at retail ...." § 39–26–104(1)(a), 11 C.R.S. (2001).

The Department determined that the transaction between Sumitomo and Telluride constituted a taxable sale. "Sale" for purposes of this section is defined at section 39–26–102(10): " 'Sale' or 'sale and purchase' includes installment and credit sales and the exchange of property as well as the sale thereof for money; every such transaction, conditional or otherwise, for a consideration, constituting a sale...." § 39–26–102(10), 11 C.R.S. (2001). In this case, Telluride acquired the personal property in exchange for "good and valuable consideration" paid to Sumitomo. Sumitomo's endorsement to Telluride recited that it was transferring "all the right, title, and interest in and to the within and foregoing instrument, *and the property therein described, without recourse.*" (Emphasis added.) This transaction meets the definition of "sale and purchase" set out in section 39–26–102(10).

Section 39–26–102(10) lists various narrow exceptions to the definition of taxable sales. *See* § 39–26–102(10), 11 C.R.S. (2001). One of these exceptions is "the repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder ...." § 39–26–102(10)(j), 11 C.R.S. (2001). Telluride argues that its acquisition of the certificate of purchase from Sumitomo qualifies for

exemption under section 39–26–102(10)(j). In making this argument, Telluride turns to section 38–38–403, which states that "every certificate of purchase ... shall be assignable ... and such assignee shall be treated for all purposes as the original holder of such certificate." *See* § 38–38–403, 10 C.R.S. (2001). However, this provision appears in the foreclosure and public trustee provisions of the statute.[2] Those provisions set forth the rights of lienholders who foreclose through the public trustee, property owners who exercise their right of redemption, and certificate purchasers and their assignees who are entitled to a public trustee's deed in the event the owner does not exercise the right of redemption. §§ 38–38–401 to –404, 10 C.R.S. (2001). They do not address the property sales tax consequences of a purchase transaction, such as Telluride's.

▬▬▬ When construing statutes, we should give effect to each word and construe each provision in harmony with the overall statutory design, whenever possible. *City of Florence v. Bd. of Waterworks*, 793 P.2d 148, 151 (Colo.1990). The sales tax statute provides an exemption for only a subset of the events that occur in the course of foreclosure and issuance of the public trustee's deed, while the foreclosure and public trustee provisions generally address the rights of successful bidders and their assignees. If different statutory provisions are in conflict or cannot be harmonized, the specific provision controls over the general provision. *Martin v. People*, 27 P.3d 846, 851–52 (Colo.2001). We hold that the tax statute, and in particular the narrow exception of section 39–26–102(10)(j), addresses the present circumstances more specifically and is consistent with the General Assembly's statutory design and intent in regard to the differing purposes of the tax code and the foreclosure and public trustee provisions. This construction also harmonizes the statutory provisions by giving effect to both the tax code and the foreclosure and public trustee provisions.

Telluride's interpretation conflicts with section 39–26–102(10)(j), because Sumitomo

---

**2.** Colorado is unique in providing for a public trustee system. *See* Willis Carpenter, *A Brief*

*History of Colorado's Public Trustee System* (1894–2002), 31 Colo. Law. 67, 67–74 (2002).

was the foreclosing lienholder, not Telluride. Telluride purchased from Sumitomo the valuable right to have the public trustee issue a deed to it for the property, if Doral did not exercise its right of redemption. Doral did not exercise its right of redemption and Telluride became owner of the real and personal property. The substance and effect of the Sumitomo/Telluride transaction was a sale from Sumitomo to Telluride of the ongoing business of the hotel, including the personal property necessary for operation.

 Sales tax is a transaction-based tax. § 39–26–102(10), 11 C.R.S. (2001). The tax code authorizes the imposition of retail sales taxes and use taxes on a broad range of purchases of tangible personal property. Whether the taxable event involves sales, rentals, leases, or simply storage or use of property, the original purchase or sale of such property is subject to taxation unless exempted by specific code provisions. *City of Colo. Springs v. Inv. Hotel Prop., Ltd.*, 806 P.2d 375, 377–78 (1991). Personal property is taxable when it is sold in the stream of commerce and the channels of trade. *Bedford v. Hartman Bros., Inc.*, 104 Colo. 190, 194, 89 P.2d 584, 585–86 (1939).

 The plain language of the section 39–26–102(10)(j) exception applies only to the repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder. When the public sale occurred, Telluride was neither, and does not qualify for the exception. Had Sumitomo received title, it could have sold its interest in the hotel real property or personal property together or separately to Telluride. There would have been no question in such event that sales tax on the personal property would be due. The fact that both types of property came into Telluride's possession because it acquired its interest in the hotel from Sumitomo prior to the issuance of the trustee's deed cannot insulate Telluride from sales tax on the personal property it acquired, in the absence of plain language of the statutory exemption so providing, which it does not.

 The Department is authorized to tax a sale at the time of the transaction. *See* § 39–26–104(1)(a), 11 C.R.S. (2001). We rec-

ognize that Telluride did not obtain title until the certificate of redemption period expired. But, Telluride's contention that the certificate of purchase did not constitute "tangible personal property" is inapposite. The certificate of purchase, one of the key components of the public trustee system, grants the holder specific, alienable rights. A prior owner or a junior lienholder may redeem a foreclosed property within a statutorily prescribed time period. Thus, the certificate of purchase entitles the holder to be paid if the redemption is made or to the property's title if the period of redemption has expired with no redemption.

 Although the certificate does not immediately give its owner either title to the property or the right to possession of the property, *Green v. Hoefler*, 115 Colo. 287, 288, 173 P.2d 208, 209 (1946), the hotel property Telluride acquired by its transaction with Sumitomo assuredly meets the definition of personal property because the chairs, fixtures and other objects are corporeal and tangible personal property within the definition of section 39–26–102(15). Telluride argues that, because the sale was conditioned on non-redemption, sales tax should not apply. However, the fact that the sale of the hotel property to Telluride became effective only upon expiration of the redemption period, and was conditional until then, does not remove the Department's authority to tax the sale of the personal property. The legislature has authorized the Department to tax conditional transactions in which personal property is sold. *See* § 39–26–102(10), 11 C.R.S. (2001).

Title to the property vests in the purchaser upon expiration of the redemption periods. *See* § 38–38–501, 10 C.R.S. (2001). As evidenced by its Public Trustee's Deed, Telluride acquired title to and full use of the property upon expiration of the redemption periods. Had redemption occurred prior to issuance of the deed, no sales tax would be owed and any paid would be subject to refund. The Department and court of appeals correctly determined that no refund is due under the facts and the law applicable to this case. The District Court erred in ordering the tax refund.

### III.

Accordingly, we affirm the judgment of the court of appeals, which upheld the Department's tax assessment and reversed the District Court's refund order.