INTERNATIONAL PAPER COMPANY, a New York corporation, successor in interest to Union Camp Corporation, a Delaware corporation, Plaintiff–Appellant,

v.

Cheryl D. COHEN, Manager of Revenue for the City and County of Denver, State of Colorado; and City and County of Denver, a municipal corporation, Defendants–Appellees.

No. 04CA0314.

Colorado Court of Appeals,
Div. I.

June 16, 2005.

Certiorari Denied Jan. 9, 2006.

Oreck, Bradley, Crighton, Adams & Chase, Nicole Crighton, Jesse R. Adams, III, Boulder, Colorado, for Plaintiff–Appellant.

Cole Finegan, City Attorney, Charles T. Solomon, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge HUME *.

In this sales tax and use tax case, International Paper Company, successor in interest to Union Camp Corporation (Taxpayer), appeals the trial court's order affirming three

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

notices of final determination, assessment, and demand for payment issued by the Department of Revenue for the City and County of Denver (DOR). We vacate the trial court's order concerning the assessment of sales tax on fixtures and the imposition of penalties, remand for further findings, and otherwise affirm.

The DOR conducted a sales, use, and occupational privilege tax audit of Taxpayer's business for the period of June 1994 through November 1997. During this period, Taxpayer owned and operated a corrugated box manufacturing plant in Denver. Near the end of the audit period, Taxpayer solicited bids for the sale of the Denver box plant, and later executed a letter of intent to sell the plant to the Weyerhaeuser Corporation.

To effectuate its goal of minimizing its sale or use tax liability, Taxpayer decided to create a limited liability company (LLC), transfer its assets to LLC in exchange for a membership interest, and then sell that interest to Weyerhaeuser. The transaction was later carried out as planned, and Taxpayer sold its membership interest to Weyerhaeuser for $16.5 million.

After reviewing Taxpayer's financial records, the DOR concluded that Taxpayer did not collect and remit sales tax for the transfer to the subsidiary, and additional sales tax was assessed, including tax for the sale of certain items of equipment that Taxpayer argued had become fixtures in the box plant.

The DOR also assessed additional use tax for both fixed and nonfixed assets belonging to Taxpayer. With regard to the nonfixed assets, the DOR conducted a "block sample" wherein the DOR reviewed Taxpayer's business records for a consecutive three-month period during the fourth quarter of 1996. The results of the block sample were used to calculate an error ratio, which was then applied to the entire audit. Regarding fixed assets, the DOR employed a full-cost accounting method.

The DOR issued three Notices of Final Determination assessing sales, use, and occupational privilege tax plus interest and penalties. Taxpayer appealed the three notices to the Manager of Revenue for the City and County of Denver. The Manager of Revenue affirmed. On appeal to the trial court, the parties submitted a joint stipulation of facts, and the trial court affirmed the DOR on summary judgment. This appeal followed.

## I. Standard of Review

■ The Denver Revised Municipal Code (D.R.M.C.) provides that the taxpayer carries the burden of proof by a preponderance of the evidence with regard to a petition for revision, modification, or cancellation of an assessment. D.R.M.C. 53–117(e). We presume that taxation is the rule, and it is the taxpayer's burden to prove it is entitled to an exemption. *Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260 (Colo. 2002). Appellate review of summary judgment is de novo. *Serv. Merch. Co. v. Schwartzberg*, 971 P.2d 654 (Colo.App.1997).

## II. Sales Tax

We reject Taxpayer's challenge to the sales tax assessed on transfer of the box plant, but conclude that further findings are necessary as to the tax on certain fixtures.

### A. Transfer of the Box Plant

■ Taxpayer contends the transfer of the box plant to the newly formed subsidiary did not constitute a "retail sale" because there was no consideration for the transaction. We disagree.

■ D.R.M.C. 53–25(1) provides that tax is levied and shall be collected and paid "on the purchase price paid or charged upon all sales and purchases of tangible personal property at retail." A "sale" within the meaning of the code includes "every transaction, conditional or otherwise, based upon consideration." D.R.M.C. 53–24(19). "Tangible personal property" means corporeal personal property, or that which can be perceived and is tangible. D.R.M.C. 53–24(21); *Telluride Resort & Spa, L.P., supra.* A "retail sale" means any sale within the city except a wholesale sale. D.R.M.C. 53–24(17). A "wholesale sale" is a sale by a wholesaler to licensed retail merchants, jobbers, dealers, or other wholesalers for resale. D.R.M.C. 53–24(27). The General Assembly intended

the scope of sales subject to the tax to be very sweeping and virtually all encompassing. *Telluride Resort & Spa, L.P., supra.*

For its assertion that there was no consideration, Taxpayer relies on *Allied–Signal Inc. v. Wyoming State Board of Equalization,* 813 P.2d 214 (Wyo.1991). In *Allied–Signal,* the court concluded that a parent corporation's transfer of its assets to a newly formed subsidiary in exchange for its stock was a taxable event. The court, however, was unable to discern the actual value of the consideration because the stock was newly issued, and no tax was assessed. We decline Taxpayer's invitation to reach the same result here.

The record demonstrates that Taxpayer received a membership interest in the newly formed LLC in exchange for transferring the box plant to the LLC. This membership interest was, in turn, transferred to Weyerhaeuser in exchange for $16.5 million. *Allied–Signal* did not involve a third party providing consideration to the transferor to establish the value of the transfer to the subsidiary as exists here. As in *Allied–Signal,* we conclude here that the transfer was a taxable event, but unlike in *Allied–Signal,* the value of the exchange can be derived from the consideration paid by Weyerhaeuser.

■ Consideration is defined as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act." *Black's Law Dictionary* 324 (8th ed.2004). The fact that consideration comes from a third party, rather than from a promisee, does not render the consideration legally insufficient, provided the promisor receives a benefit from the third party as consideration for the agreement. *Olsen v. Bondurant & Co.,* 759 P.2d 861, 864 (Colo.App.1988).

Here, Taxpayer received a benefit for transferring title and assets to its subsidiary, and the fact that part of the benefit came from the contribution of a third party does not mean that there was no consideration for the sale.

The stipulated facts demonstrate that the transfer of assets was essentially a single transaction. Taxpayer sought to sell the plant directly to Weyerhaeuser, but later decided to form a new LLC and transfer the assets to that LLC, with the intent of limiting tax liability. Although this plan removed Weyerhaeuser as a party directly involved in that transaction, Weyerhaeuser later received a membership interest in the subsidiary in exchange for paying $16.5 million. Under these facts, we conclude that Taxpayer bargained for the payment from Weyerhaeuser to carry out the transaction and, therefore, Taxpayer's receipt of $16.5 million from Weyerhaeuser, in exchange for the membership interest it received from the LLC, was an adequate measure of the consideration for the transaction between Taxpayer and the LLC.

We therefore conclude that a "sale" occurred within the meaning of D.R.M.C. 53–24(19). Because there is no dispute that the assets Taxpayer transferred were tangible personal property, and that the sale was at retail, we will not disturb the DOR's assessment. D.R.M.C. 53–25(1).

### B. Fixtures

■ Taxpayer next contends that the trial court improperly held that certain pieces of equipment were fixtures subject to sales tax without first determining whether the equipment retained its legal status of "tangible personal property" after being annexed to the real property. We agree.

D.R.M.C. 53–38, entitled "[r]eturn required upon sale of business; lien on purchaser," provides that any retailer that "sells out his business ... shall pay over to the manager all taxes levied hereunder upon the sale itself of said business, stock of goods, fixtures and equipment to the purchaser." The parties agree that Taxpayer was a retailer, and that it transferred all its assets to its newly formed subsidiary. D.R.M.C. 53–38, therefore, applies.

Taxpayer argues that the phrase "all taxes levied hereunder" in this section directs us to examine D.R.M.C. 53–25, which provides that taxes shall be imposed on purchases of tangi-

ble personal property at retail. Taxpayer argues that taxes may only be imposed on tangible personal property as a result of this scheme. We agree.

When interpreting a statute, we must honor the plain meaning of the words when they are clear. *See A.D. Store Co. v. Executive Dir.*, 19 P.3d 680 (Colo.2001). However, we will not follow a statutory interpretation that will lead to an illogical or absurd result, and therefore, we strive to construe a statute as a whole to give consistent, harmonious effect to all its parts. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585 (Colo.2005).

Our primary task when interpreting an ordinance is to determine and give effect to the intent of the body enacting it. We are not bound by a trial court's interpretation of a city ordinance. *Serv. Merch. Co. v. Schwartzberg, supra*, 971 P.2d at 658.

D.R.M.C. 53–25 is the only section of the code in the record before us that levies a sales tax. As applicable to this transaction, § 53–25(1) limits the imposition of sales tax to tangible personal property only. D.R.M.C. 53–24(21) defines tangible personal property to mean "corporeal personal property."

■ Applying the plain meaning of the terms, we note that personal property includes "any moveable thing" that is subject to ownership "and not classified as real property." *Black's Law Dictionary, supra*, at 1254. Real property is generally defined to include land and anything growing on, attached to, or erected upon it, excluding anything that may be severed without injury to the land. *Black's Law Dictionary, supra*, at 1254. We further note that in the context of the state's sales tax, tangible personal property includes neither real property, such as land and buildings, nor personal property that loses its identity by becoming an integral and inseparable part of the realty, and is removable only with substantial damage to the premises. Dep't of Revenue Reg. No. 26–102.14, 1 Code Colo. Regs. 201–4; *Raynor Door, Inc. v. Charnes*, 765 P.2d 650, 651 (Colo.App.1988).

Section 53–38(a) directs taxes to be paid under the code for the sale of the business, stock of goods, fixtures, and equipment. Historically, fixtures are considered to have characteristics of both real and personal property. *Black's Law Dictionary, supra*, at 1254. Thus, the term "fixtures" can refer to personal property that has become sufficiently annexed to real property that it becomes a part of the freehold or to personal property that is a removable trade fixture that does not lose its identity as personal property. *Andrews v. Williams*, 115 Colo. 478, 173 P.2d 882 (1946). *See generally* Adam W. Chase & Bruce J. Oreck, *Colorado Sales & Use Taxation* § 3.11, at 3–116 (2003). The code does not levy tax on the sale of real property, and, therefore, to the extent the equipment here lost its identity as tangible personal property by becoming an integral and inseparable part of the realty, it is excluded from sales tax.

We therefore conclude that absent a determination of whether the equipment was a fixture that became realty upon its annexation to the real property or a fixture that did not lose its legal status as personal property, the tax was improperly assessed. Even though presented with this factual issue, the trial court did not make such a determination. Accordingly, on remand, the court should do so.

### III. Use Tax

We reject Taxpayer's challenges to the use tax assessed on nonfixed and fixed assets.

#### A. Nonfixed Assets

■ Taxpayer next argues that use tax was improperly assessed for nonfixed assets because the block sample conducted by the DOR included items that were not purchased on a regular basis. We are not persuaded.

D.R.M.C. 53–96 provides that use tax shall be assessed for "exercising the taxable privilege of storing, using, distributing, or consuming in the city . . . any article of tangible personal property, purchased at retail, for said exercise of said privilege." Tax is assessed on the purchase price paid or charged upon all sales and purchases of tangible personal property. D.R.M.C. 53–96(1).

The DOR conducted a block sample to determine whether Taxpayer complied with its obligation to pay use tax for its purchases of nonfixed assets. The block sample consisted of reviewing Union Camp's business records for a consecutive three-month period during the fourth quarter of 1996. By dividing the cost of items for which tax should have been paid, but was not paid, by the total amount of purchases during sample period, the DOR was able to calculate an error rate. The error rate was then applied to the entire audit period, and tax was assessed accordingly.

Taxpayer does not object to the block sample method employed, but argues that the block sample resulted in an unfair tax assessment because the purchase of backer belts and rollers, which are purchased infrequently, was included in the sample. Taxpayer's argument is unpersuasive.

A DOR representative testified that the block sample examined purchases of "expendable" items, not fixed assets. Although testimony established that backer belts are typically replaced every nine months to a year and rollers, every two years, no invoices or other evidence was produced demonstrating the frequency with which these items were purchased or maintained. *See* D.R.M.C. 53–117(e) (the taxpayer has the burden of proving the petition to modify or cancel the DOR's assessment). Therefore, the DOR was unable to conclude from business records how often these items were purchased, or how often replacement parts were purchased for their maintenance. Additionally, the purchase of these two items was only a small fraction of the sample.

We therefore conclude that Taxpayer has not demonstrated that the DOR's assessment of use tax for nonfixed assets should be cancelled or modified.

### B. Fixed Assets

█ Taxpayer next contends that the assessment of tax for fixed assets was error. We reject this contention.

Under D.R.M.C. 53–95, the "purchase price" upon which use tax is assessed "means the aggregate value measured in currency paid or delivered or promised to be paid or delivered in consummation of a sale, without any discount from the price on account of the cost of the property sold, cost of the materials used, labor service cost, or any other expense whatsoever."

Taxpayer contends that use tax was improperly assessed on fixed assets because the DOR used a full-cost accounting method which accounted for installation costs, taxes, and any internal labor associated with the acquisition and installation of the fixed asset. According to Taxpayer, "installation, including in-house labor, and taxes, are not subject to sales and use taxes." In light of our reading of § 53–95, which provides that there shall be no discount for materials used, labor cost, or any other expense, we reject Taxpayer's contention.

### IV. Penalties

█ Taxpayer further asserts that it was improperly assessed penalties because it has shown good cause to warrant the waiver of penalties. We agree that penalties were assessed without sufficient findings.

The D.R.M.C. imposes penalties on taxpayers for neglecting or refusing to file a return or make a payment as required by the code. D.R.M.C. 53–49, 53–114. The manager may waive the penalty "for good cause shown." D.R.M.C. 53–65, 53–133. Whether "good cause" has been shown is within the discretion of the hearing officer for the DOR, and findings must be entered regarding the hearing officer's decision. *United Air Lines, Inc. v. City & County of Denver,* 973 P.2d 647 (Colo.App.1998), *aff'd,* 992 P.2d 41 (Colo. 2000).

Here, although the DOR concluded that penalties were properly imposed, no findings were made as to whether Taxpayer demonstrated good cause. Therefore, even if the DOR considered whether good cause was shown, we must remand to the DOR for findings on the issue of waiver of penalties. The hearing officer may, in his or her discretion, allow the parties to submit additional evidence concerning this issue. *See United Air Lines, Inc., supra.*

The order of the trial court is vacated with respect to the assessment of sales tax on fixtures and the imposition of penalties, and the case remanded for further findings consistent with this opinion first by the DOR as to the issue of waiver of penalties and subsequently by the trial court as to the issue of fixtures. The trial court's order is affirmed in all other respects.

Judge MARQUEZ and Judge HAWTHORNE concur.