2014 COA 55

**QWEST CORPORATION,**
**Plaintiff–Appellant,**

v.

**CITY OF NORTHGLENN, Colorado, a home rule city; and City of Thornton, Colorado, a home rule city, Defendants–Appellees.**

**Court of Appeals No. 13CA0285**

Colorado Court of Appeals,
Div. VII.

Announced April 24, 2014

Larry H. McMillin, Denver, Colorado; Garlin Driscoll, LLC, David J. Driscoll, Jeffrey S. Rose, Louisville, Colorado, for Plaintiff–Appellant

Hayes, Phillips, Hoffman & Carberry, P.C., Kendra L. Carberry, Kelly L. Donlon, Denver, Colorado, for Defendant–Appellee City of Northglenn

Margaret Emerich, City Attorney, Gary G. Jacobson, Deputy City Attorney, Thornton, Colorado; Williamson & Hayashi, LLC, Mary Lynn Macsalka, Boulder, Colorado, for Defendant–Appellee City of Thornton

Opinion by JUDGE FOX

¶ 1 Plaintiff, Qwest Corporation, appeals the judgment in favor of defendants, City of Northglenn (Northglenn) and City of Thornton (Thornton). Qwest contends that it is not liable to Thornton for unpaid use taxes because it erroneously paid the use taxes in question to Northglenn instead. Because the statute of limitations in § 39–26–210, C.R.S. 2013, precludes Thornton from collecting the taxes erroneously paid to Northglenn, and because Qwest remains liable to Thornton for its tax deficiency under § 29–2–106.1, C.R.S. 2013, we affirm.

## I. Background and Procedural History

¶ 2 The facts of this case are undisputed. Qwest, a telephone services provider, has a facility in Thornton, a home rule municipality. Under Thornton's tax code, Qwest must pay use taxes on new purchases delivered to the Thornton facility. Northglenn, an adjacent home rule municipality, has a similar tax ordinance.

¶ 3 Qwest's Thornton facility is across the street from Northglenn. Between 2002 and 2005, an error in Qwest's computer software recognized the Thornton facility as being in Northglenn. As a result, Qwest mistakenly paid to Northglenn use taxes it owed to Thornton during that time.

¶ 4 The record indicates that Qwest may have known about the error as early as 2002. However, it made no effort to correct its mistake until 2005, when it started paying taxes to the correct municipality.

¶ 5 In 2008, Thornton conducted an audit of Qwest for the years 2002 through 2008 and discovered that Qwest had failed to pay sales and use taxes to Thornton from 2002 through 2005. After Thornton notified Qwest of the deficiency, Thornton and Qwest entered into numerous agreements extending the three-year limitations period under § 39–26–210 for collecting tax assessments and requesting refunds applicable to Qwest's tax liability to Thornton. Qwest and Thornton also agreed to the method Thornton used to estimate the amount of use tax Qwest owed. Thornton later issued Qwest a sales and use tax assessment totaling $65,862.19 for the period 2002 through 2005.

¶ 6 In 2010, pursuant to § 29–2–106.1(3), Qwest requested a hearing concerning its use tax liability from 2002 to 2005 by the Colorado Department of Revenue (the Department) and joined Northglenn as a respondent. This was the first time that Qwest notified Northglenn that the municipality had received tax payments in error. At the conclusion of the hearing, the Department concluded that any action against Northglenn to collect taxes for the 2002 through 2005 period was time barred, and that Qwest remained liable to Thornton.

¶ 7 Qwest appealed to the district court and moved for summary judgment. The district court affirmed the Department's decision. As relevant here, the district court concluded that §§ 29–2–106.1(5) and (6) did not relieve Qwest of its tax liability to Thornton for that period because the statute of limitations in § 39–26–210 relieved Northglenn of any duty to forward Qwest's tax payments to Thornton.

## II. Standard of Review

¶ 8 When a taxpayer appeals the final determination of the Department, the district court examines the case de novo. *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1047 (Colo.1991); *Noble Energy, Inc. v. Colo. Dep't of Revenue,* 232 P.3d 293, 295–96 (Colo. App.2010); *see also* § 39–21–105(2)(b), C.R.S. 2013. In reviewing the decision of the district court, we defer to the district court's factual findings, and we will disturb them only if they are clearly erroneous and not supported by the record. *Noble Energy,* 232 P.3d at 296; *see also* § 39–21–105(7). We review the district court's application of law, including its grant of summary judgment, de novo. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002); *Noble Energy, Inc.,* 232 P.3d at 296.

¶ 9 Statutory construction also presents a question of law that we review de novo. *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1088 (Colo.2011). When construing a statute, we give effect to the intent of the General Assembly. *Id.* We construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts. *Id.* If the statutory language is clear, we apply its plain and ordinary meaning, and we avoid interpretations that could lead to an absurd result. *Id.*

## III. Qwest's Tax Liability

¶ 10 Qwest contends that, under §§ 29–2–106.1(5)–(6), it is immune from liability for use taxes owed to Thornton from 2002 to 2005 because it erroneously paid those taxes to Northglenn. According to Qwest, the district court erred in concluding that the limitations period in § 39–26–210 relieves Northglenn of any obligation to forward the erroneously paid taxes to Thornton. We disagree.

### A. Tax Dispute Resolution

¶ 11 Section 29–2–106.1 establishes a process for local governments to collect unpaid sales and use taxes and for taxpayers to claim refunds on overpaid sales and use taxes. This statute allows a taxpayer owing taxes or claiming a refund to request a hearing with the appropriate local government, and, once the taxpayer exhausts all local remedies, to request a hearing before the Department. §§ 29–2–106.1(2), (3)(a); *MDC Holdings, Inc. v. Town of Parker,* 223 P.3d 710, 717 (Colo.2010).

¶ 12 When a taxpayer asserts, as Qwest does here, that it erroneously paid use taxes to another local government, it must join that local government as a party to the hearing before the Department. § 29–2–106.1(5). The taxpayer does not need to file

an additional claim for a refund for the allegedly erroneous tax payment. *Id.*

■ ¶ 13 Under this statutory scheme, if the Department determines that the disputed tax was paid, but to the wrong local government, then the taxpayer is relieved of the tax due, and the government that received the payment in error must forward that payment to the appropriate local government. § 29–2–106.1(6). However, if the amount paid is less than the tax due, the taxpayer is liable for the deficiency. *Id.* If, on the other hand, the amount paid exceeds the tax due, the government must refund the overpayment to the taxpayer. *Id.*

### B. Statute of Limitations

■ ¶ 14 Colorado's general use tax statute limits the time to collect taxes to three years after the date the tax is due. § 39–26–210. Local government tax ordinances incorporate the statute of limitations of the general sales and use tax statutes. *See* § 29–2–106(1), C.R.S.2013 ("Unless otherwise provided in this article, the provisions of article 26 of title 39, C.R.S., shall govern the collection, administration, and enforcement of sales taxes authorized under this article."); § 29–2–106(8) ("Each home rule city; town, and city and county shall follow, and conform its ordinances where necessary to, the statute of limitations applicable to the enforcement of state sales and use tax collections [and] the statute of limitations applicable to refunds of state sales and use taxes[.]").[1]

■ ¶ 15 The parties disagree as to whether the statute of limitations set forth in § 39–26–210 applies to Qwest's attempt to make Northglenn forward the erroneous tax payments to Thornton. They agree that, if it applies, the limitations period has expired. We conclude that it applies.

■ ¶ 16 The very language of the statute provides that a three-year statute of limitations applies to *any* action to collect use taxes:

The taxes for any period, together with the interest thereon and penalties with respect thereto ... shall not be assessed ... or suit for collection be instituted, nor *any other action to collect the same* be commenced, more than three years after the date on which the tax was or is payable[.]

§ 39–26–210 (emphasis added). " 'Any' action means 'all' actions, and therefore includes equitable as well as legal actions." *City of Colorado Springs v. Tipton,* 910 P.2d 75, 77 (Colo.App.1995) (citation omitted). "[A]n 'assessment of tax' consists merely of an ascertainment of the amount due." *F.W. Woolworth Co. v. State Dep't of Revenue,* 699 P.2d 1, 3 (Colo.App.1984). Section 39–26–210 does not distinguish between actions against the taxpayer and actions against other persons or entities. *Tipton,* 910 P.2d at 77. Thus, we hold that this statute of limitations applies to any attempts by Qwest or Thornton to recover taxes paid to Northglenn. *See id.* (holding that the taxing statute of limitations applies to an action by a city to recover taxes erroneously paid to the state); *F.W. Woolworth Co.,* 699 P.2d at 3 (holding that the taxing statute of limitations applies to an action by the state to collect excess sales tax from a retailer).

¶ 17 We disagree with the dissent's characterization of § 29–2–106.1 as providing a defense for taxpayers. On the contrary, the statute allows the taxpayer to seek a legal remedy—the transfer of its erroneous tax payment—when it believes it has paid taxes to the wrong jurisdiction. § 29–2–106.1(5) ("The taxpayer need not file a claim for refund in order to pursue the remedy provided by this subsection (5)."). Thus, the taxpayer is not excused from complying with the statute of limitations in § 39–26–210.

¶ 18 Qwest was aware that a three-year statute of limitations applied to its use tax obligations. In fact, Qwest and Thornton had agreements extending the statute of limitations as to Qwest's obligations to Thornton, but Northglenn did not participate in those

---

1. The district court also applied Northglenn's three-year statute of limitations for tax assessments. *See* Northglenn, Colo., Code § 5–2–25(a)(1) (2013). Qwest argues that the municipal code does not apply here because tax dispute resolution is a matter of statewide concern. § 29–2–106.1(1), C.R.S.2013; *MDC Holdings, Inc. v. Town of Parker,* 223 P.3d 710, 717 (Colo. 2010). Because the periods are the same, we need not resolve that issue.

agreements. Qwest did not join Northglenn to this action until 2010, about eight years after Qwest discovered its own error and years after Qwest began negotiating time extensions with Thornton.[2]

¶ 19 According to Qwest, it is relieved of tax liability because it paid the use taxes it owed; it simply paid them to the wrong local government. *See* § 29–2–106.1(5) (If the Department "determines that the disputed tax was paid, but to the wrong local government, then the taxpayer shall be relieved of the tax due[.]"). However, we conclude that Qwest is relieved of liability *only if* Thornton could collect the erroneous payments from Northglenn. *See* § 29–2–106.1(6) (instructing local governments to forward any erroneously received tax payments to the appropriate local government). Because Qwest did not join Northglenn to the litigation until it was too late for Thornton to collect the erroneous payment from Northglenn, Qwest cannot require Northglenn to forward its erroneous tax payment to Thornton. *See* § 39–26–210.

¶ 20 Qwest provides no authority to support its position that the limitations period does not apply here, and we have found none. Perhaps there is no such authority because the local government tax ordinances clearly incorporate the statute of limitations of the general sales and use tax statutes. *See* §§ 29–2–106(1) and (8).

¶ 21 Even though § 29–2–106.1 is silent on a limitations period, § 29–2–106(8) was enacted as part of the same bill. *See* Ch. 244, secs. 2–3, §§ 29–2–106(8), 29–2–106.1, 1985 Colo. Sess. Laws 1031–35. Accordingly, the General Assembly intended for the two sections to be construed together and harmoniously. *See Reg'l Transp. Dist. v. Outdoor Sys., Inc.,* 34 P.3d 408, 414 (Colo.2001) ("When construing a statute, we attempt to give effect to the statutory scheme as a whole.").

¶ 22 There are sound reasons for limitations periods, including promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims. *See Lake Ca-*

*nal Reservoir Co. v. Beethe,* 227 P.3d 882, 886 (Colo.2010); *Morrison v. Goff,* 91 P.3d 1050, 1052 (Colo.2004). It would not have been unreasonable, under the circumstances here, for Northglenn to have expended the taxes collected from 2002 to 2005 without keeping a reserve to account for taxpayer error brought to its attention well beyond the limitations period. *See, e.g., Coquina Oil Corp. v. Larimer Cnty. Bd. of Equalization,* 770 P.2d 1196, 1199 (Colo.1989) (concluding that the term "clerical error" in § 39–10–114(1)(a)—a tax abatement provision—did not encompass error made by the taxpayer and relied upon by the taxing authority); *Armstrong v. Driscoll Constr. Co.,* 107 Colo. 218, 222, 110 P.2d 651, 652–53 (1941) (concluding that the limitation period for filing tax refunds "undoubtedly was a legislative attempt to prevent the filing of stale claims"); *E.A. Stephens & Co. v. Bd. of Equalization,* 104 Colo. 556, 561, 92 P.2d 732, 734 (1939) (denying a claim for refund where permitting recovery "would endanger the entire tax structure of the state and lead to a multiplicity of suits for refund of taxes"); *see also* § 39–26–703(2)(d), C.R.S.2013 (statute of limitations for sales and use tax disputes and refunds).

■■■ ¶ 23 Qwest effectively claims to be exempt from the statute of limitations and taxpayer burden, arguing that Northglenn bears the burden of correcting its mistake, even though Qwest failed to notify Northglenn of the error until eight years after the first erroneous payment. We must " 'presume that taxation is the rule and exemption from taxation is the exception.' " *Noble Energy, Inc.,* 232 P.3d at 296 (quoting *Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue,* 40 P.3d 1260, 1264 (Colo.2002)).

¶ 24 Construing the applicable statutes to give consistent, harmonious, and sensible effect to all of their parts, *see Denver Post,* 255 P.3d at 1088, we conclude that Qwest is liable to Thornton for the use taxes it owes (but has failed to pay) to the city. *See* § 29–2–106.1(6).

---

**2.** The trial court aptly noted that, having discovered its own mistake in 2002, Qwest was in the best position to realize and correct the computer error that resulted in payment of sales and use taxes to Northglenn instead of Thornton. *See Noble Energy,* 232 P.3d at 296 (we defer to the district court's factual findings if supported by the record).

¶ 25 Northglenn is not required to forward the tax payment to Thornton, and Thornton has not received Qwest's use taxes. Qwest must therefore pay the deficiency. *See* § 29–2–106.1(6) ("If the amount [of taxes] paid is found to be less than the taxes due, then the taxpayer shall pay the deficiency[.]").

¶ 26 Pursuant to § 39–26–210, Northglenn need not refund the tax payments to Qwest, nor forward the funds to Thornton under § 29–2–106.1(6). We affirm the district court's determination that Qwest remains liable to Thornton for the use tax deficiency for 2002–2005.

### IV. Taxes Owed by Northglenn to Thornton

¶ 27 Qwest next contends that the district court erred in failing to determine how much of Qwest's erroneous tax payment Northglenn must forward to Thornton. Because we conclude that Qwest, and not Northglenn, is responsible for the taxes owed to Thornton, we need not address this contention. *See Cherry Creek Gun Club, Inc., v. Huddleston*, 119 P.3d 592, 596 (Colo.App.2005) (when one issue is dispositive, the court need not address additional arguments raised by appellants).

### V. Conclusion

¶ 28 The judgment is affirmed.

JUDGE NAVARRO concurs.

JUDGE J. JONES dissents.

J. JONES, J., dissenting.

¶ 29 This case concerns three actors: the City of Thornton, which claims to be owed taxes from Qwest Corporation; the City of Northglenn, which received taxes from Qwest that it had no legal right to receive; and Qwest, which erroneously (over)paid Northglenn taxes it owed Thornton. The majority construes sections 29–2–106.1 and 39–26–210, C.R.S. 2013, to deprive Qwest of its statutory defense to Thornton's action to collect taxes, simply because Thornton's stat-

utory right to recover the taxes Northglenn received from Qwest may be impaired by a statute of limitations. I do not believe such a result is justified by the texts of the relevant statutes, and therefore I respectfully dissent.

¶ 30 The General Assembly has enacted a statute to deal with the situation presented in this case—section 29–2–106.1. That statute creates a dispute resolution process that applies when a tax dispute affects "persons and entities across the jurisdictional boundaries of taxing jurisdictions...." § 29–2–106.1(1). Under the statute, the process proceeds, as relevant here, as follows:

1. A local government asserting that a taxpayer owes taxes thereto sends a "notice of deficiency" (which must contain specified information) to the taxpayer. § 29–2–106.1(2)(a).

2. The taxpayer may then file a protest with the local government and request a hearing before the executive director of the Department of Revenue "after exhaustion of local remedies." § 29–2–106.1(2)(b), (3).[1]

3. If the matter remains unresolved after the taxpayer exhausts local remedies, and the taxpayer timely and properly requests a hearing before the executive director, the hearing shall be conducted, and the taxpayer, the local government claiming a deficiency, and any local government to which the taxpayer claims to have paid the taxes allegedly owed to the local government claiming a deficiency shall be made parties. § 29–2–106.1(3)(a), (5).

4. Any party bound by the executive director's decision may appeal that decision to district court in accordance with section 39–21–105, C.R.S.2013. § 29–2–106.1(7).

¶ 31 Subsection (5) of section 29–2–106.1 allows a taxpayer claiming that it has paid the taxes allegedly owed to the local government claiming a deficiency to another local government to assert that payment as a complete defense to the deficiency claim. It provides in full as follows:

> Qwest exhausted local remedies and timely requested a hearing before the executive director.

---

**1.** "Exhaustion of local remedies" is defined in section 29–2–106.1(2)(c). It is undisputed that

If the taxpayer asserts that all or part of a sales or use tax which is the subject of the hearing has been paid to or is due to another local government, then such other local government shall be joined as a party to the hearing. The taxpayer need not file a claim for refund in order to pursue the remedy provided by this subsection (5). If the executive director determines that the disputed tax was paid, but to the wrong local government, then the taxpayer shall be relieved of the tax due up to the amount paid together with an abatement of interest thereon and all penalties.

Because subsection (5) provides a defense not merely to the claim of deficiency, but to any claim of interest or penalties on the taxes allegedly owed, it essentially treats a taxpayer as if it paid the taxes to the proper entity from the time of payment.

¶ 32 Subsection (6) provides that in the event the taxpayer is successful in asserting the defense provided in subsection (5), "[a] local government which is found to have erroneously received payment from the taxpayer shall forward such payment to the appropriate local government...."

¶ 33 It is apparently undisputed that Qwest paid taxes to Northglenn that it should have paid to Thornton. It is also undisputed that Qwest and Thornton entered into a series of tolling agreements. From Thornton's standpoint, these tolling agreements were necessary to toll the statute of limitations applicable to any "action to collect" taxes, section 39–26–210.

¶ 34 Thornton, however, did not enter into any similar tolling agreement with Northglenn. Nevertheless, Thornton contends that its right to receive a transfer of the taxes paid by Qwest to Northglenn under section 29–2–106.1(6) is barred by the three-year statute of limitations in section 39–26–210, and that this alleged bar effectively extinguishes Qwest's statutory defense under section 29–2–106.1(5), despite its tolling agreements with Qwest. The majority agrees with this contention, but I cannot.

¶ 35 I do agree with the majority that in interpreting a statute we must read all of its provisions together, harmonizing them so that none is rendered meaningless. We must also consider the entire relevant statutory scheme. *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15, 307 P.3d 1116. But in doing this we must be careful not to rewrite the statute, add to it something it plainly does not say, or create an absurd result. *See Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 19, 303 P.3d 558; *In re Marriage of Joel & Roohi*, 2012 COA 128, ¶ 19, —— P.3d ——; *Rost v. Atkinson*, 2012 COA 74, ¶ 22, 292 P.3d 1041.

¶ 36 In effect, the majority applies the statute of limitations in section 39–26–210 to Qwest's statutory defense. But that statute expressly applies only to efforts to assess taxes, the filing of notices of tax liens, and suits and other actions to collect taxes. By asserting its statutory defense, Qwest is not doing any of those things. And I am not aware of any legal authority holding that a statute of limitations applies to a defense, as opposed to a claim for relief.

¶ 37 Faced with this dearth of legal authority, the majority simply denies that section 29–2–106.1 provides a taxpayer with a defense, asserting, without analysis or citation to authority, that it provides such a taxpayer with a remedy—the transfer of funds from one local government to another. In so doing, the majority disregards the legal meanings of "defense" and "remedy," as well as the statutory scheme.

¶ 38 A defense is " 'that which is put forward to diminish plaintiff's cause of action or defeat recovery.' " *Bank of Am. v. Kosovich*, 878 P.2d 65, 67 (Colo.App.1994) (quoting *Black's Law Dictionary* 377 (5th ed.1979)); *see also Dinosaur Park Invs., L.L.C. v. Tello*, 192 P.3d 513, 516 (Colo.App.2008) ("An affirmative defense is 'a legal argument that a defendant ... may assert to require the dismissal of a claim or to prevail at trial.' " (quoting *State v. Nieto*, 993 P.2d 493, 507 (Colo.2000))); *Black's Law Dictionary* 482 (9th ed.2009) (a defense is " 'that which is alleged by a party proceeded against in an action or suit, as a reason why the plaintiff should not recover....' " (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899))). A remedy, in contrast, is the means by which

a party asserting a claim may enforce its right. *See Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 384, 38 S.Ct. 501, 62 L.Ed. 1171 (1918) ("A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury."); *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 147 n. 50 (2d Cir.2010) ("Remedies refer to 'precisely what the plaintiff may recover after resorting to the law.' . . . Whether a plaintiff is entitled to money damages, declaratory relief, an injunction, or specific performance are all questions of remedy." (citation omitted; emphasis omitted)), *aff'd,* —— U.S. ——, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013); *see also* 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 1. 1, at 1 (2d ed. 1993) ("The law of judicial remedies determines the nature and scope of relief to be given to a plaintiff once that plaintiff has established a substantive right by appropriate in-court procedures."); *Black's Law Dictionary* 1407 (a remedy is "[t]he means of enforcing a right or preventing or redressing a wrong").

¶ 39 Under section 29–2–106.1, only the local government claiming a right to payment of taxes from a taxpayer asserts a claim or right to relief. The taxpayer can avoid liability on the local government's claim—that is, successfully assert a defense to the claim—by establishing that it paid the taxes to another local government. § 29–2–106.1(5).[2] The local government's remedy, then, is to receive a transfer from the local government to which the taxpayer paid the taxes. § 29–2–106.1(6). That remedy is not the taxpayer's because the taxpayer does not assert a claim or seek to enforce a right.[3]

**2.** Because the taxpayer logically has the burden of proving that it paid the taxes to another local government, this defense is in the nature of an affirmative defense. *See W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1057 (Colo.1992).

**3.** I recognize that section 29–2–106.1(5) refers to the "remedy" that it provides. But it is clear to me that term is not used in its legal sense. I also note that in referring to that "remedy," subsection (5) does not refer to subsection (6).

**4.** The majority notes that Qwest was aware of the computer error in 2002, and then leaps from that fact to the conclusion that it thereby became

¶ 40 Thus, here, the claimant is Thornton. It is asserting a claim or right to relief. Qwest is not a claimant; rather, it is seeking to avoid liability on Thornton's claim. It follows that the statute provides Qwest with a defense and Thornton with a remedy against Northglenn.

¶ 41 Further, by making Thornton's ability to collect from Northglenn a condition to Qwest's right to assert its statutory defense, the majority effectively would require a taxpayer which has erroneously paid taxes to the wrong local jurisdiction to discover its mistake within the statute of limitations and then institute some type of legal action, presumably involving the local government which the taxpayer erroneously paid. There is no textual support for such a requirement. It is contrary to section 29–2–106.1(5), which says that "[t]he taxpayer need not file a claim for refund in order to pursue the remedy provided by this subsection (5)." And it fails to account for the fact that proceedings required by section 29–2–106.1 are triggered not by any action to be taken by the taxpayer, but by a local government's mailing of a deficiency notice to the taxpayer. § 29–2–106.1(2)(a). A taxpayer obviously has no control over if or when a local government will mail it a notice of deficiency. It is therefore clear to me that the taxpayer need not take any affirmative action to protect its right to assert the statutory defense provided by section 29–26–106.1(5), other than asserting it at the hearing before the executive director.[4]

¶ 42 The majority's analysis assumes that a transfer from Northglenn to Thornton would be time-barred by virtue of section 39–26–210. Perhaps.[5] But if that is so, the loss should fall on Thornton, not Qwest. The

obligated to proceed against Northglenn. But that conclusion is contrary to the express language of section 29–2–106.1(5). And I note that it is undisputed that Thornton was also aware of the error in 2002. Therefore, Thornton was in position to protect its rights under section 29–2–106.1 in 2002.

**5.** It is not clear to me that the statute of limitations in section 39–26–210 would apply to such a transfer because Thornton would not thereby impose a tax on Northglenn or seek to collect a tax from Northglenn, and Northglenn is not a "taxpayer."

defense provided in subsection (5) belongs to the taxpayer—Qwest. The right to the transfer belongs to the local government asserting the deficiency—Thornton. It is Thornton, therefore, that should be responsible for protecting its statutory right to such a transfer. Instead, the majority places the burden on Qwest, and, because Qwest did not act to protect Thornton's right, requires Qwest to pay the taxes twice. I do not see how this result can be squared with section 29–2–106.1(5).[6]

¶ 43 I also note that the majority's analysis fails to give full or fair effect to the tolling agreements between Thornton and Qwest. The majority allows Thornton to assert its claim against Qwest outside the statute of limitations because of the tolling agreements, but denies Qwest the right to assert a statutorily authorized defense to that claim because any effort by Thornton to obtain a transfer from Northglenn would be too late. Such unequal treatment is clearly inequitable.

¶ 44 For these reasons, I respectfully dissent.

---

**6.** The majority cites the principle that taxation is the rule and exemption is the rare exception. *See Colo. Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806, 810 (Colo.1996). But Qwest does not claim an exemption from paying the tax—that is, it does not contend that its activities are not subject to the tax. *See, e.g., id.* at 809; *Howard Elec. & Mech., Inc. v. Dep't of Revenue,* 771 P.2d 475, 480 (Colo.1989); *Sec. Life & Accident Co. v. Heckers,* 177 Colo. 455, 457–58, 495 P.2d 225, 226 (1972). It has paid the tax and merely objects to being required to pay it twice.